[Civ. No. 25663.   Second Dist., Div. One.   Jan. 23, 1962.]

Estate of AIMEE J. GOULD, Deceased.   ALAN CRAN-
STON, as State Controller, etc., Petitioner and Appellant,
v. JOHN C. GOULD, as Executor, etc., Objector and
Respondent.

James W. Hickey, Chief Inheritance Tax Attorney, J. D.
Lear, Acting Chief Inheritance Tax Attorney, Walter H.
Miller, Chief Assistant Inheritance Tax Attorney, and Wil-
liam L. Baugh, Assistant Inheritance Tax Attorney, for
Petitioner and Appellant.

Harold B. Pool for Objector and Respondent.

WOOD, P. J.—An inheritance tax appraiser filed his report
asserting that eight persons had remainder interests in the
estate of Aimee J. Gould, deceased, after a life estate therein
of decedent's husband, John C. Gould. The report recited

that $14,617.22 was due from decedent's estate as inheritance tax on such remainder interests.

John C. Gould, the executor of the will of said decedent, filed objections to the report and asserted therein that there was no life estate and that no tax was payable.

The court sustained the objections and made an order that no tax was due or payable.

The State Controller appeals from the order, and contends that the order was based upon an erroneous construction of the will.

On June 8, 1945, John C. Gould and Aimee J. Gould, husband and wife, executed a will entitled, "JOINT AND MUTUAL WILL OF JOHN C. GOULD AND AIMEE J. GOULD."

The will provided, in part: "That we, JOHN C. GOULD and AIMEE J. GOULD . . . do hereby make, publish and declare this instrument to be, jointly as well as severally, our last Will and Testament. . . .

". . . . . . . . . .

"SECOND: We declare that all property in which we now have any interest or which is owned by us, or either of us, or which is standing in our names, or in the name of either of us, is community property and that we have no other kind of property, either real, personal or mixed, other than such property as is now standing in our names as joint tenants.

"THIRD: It is our intention and desire to hereby dispose of all of our property, both real and personal, which we now own or which we, or either of us, may hereafter acquire, or in which we, or either of us, have any interest whatsoever, and upon our deaths, or the death of either of us, said property shall be distributed to the following persons upon the following conditions:

"a) All of our property, both real and personal, shall at the death of either of us be held and owned by the survivor during his or her lifetime as his or her own separate property, and the principal and any income thereof shall be enjoyed by such survivor as he or she shall desire or deem best during the remainder of the life of such survivor with full power to use and enjoy the same as his or her own property without being responsible or accountable therefor to any person or persons whomsoever for any part or portion thereof.

"b) Upon the death of the survivor of us and after all funeral expenses and bills have been paid, any balance remaining of said property referred to in subdivision (a) of this paragraph and all other property acquired by us, or either

of us, and owned at the time of the death of survivor shall be distributed as follows:

"1) One-half thereof shall go to the following persons, who are nieces of John C. Gould, and said property shall go to said persons, or the survivor or survivors of them, share and share alike . . . [the names, ages, and addresses of four persons are here stated in the will].

"2) One-half thereof shall go to the following persons, who are relatives of Aimee J. Gould, and said property shall go to said persons, or the survivor or survivors of them, share and share alike . . . [the names, ages, and addresses of two nephews and a niece are here stated in the will]."

On August 9, 1955, Mr. and Mrs. Gould executed a codicil entitled, "CODICIL TO JOINT AND MUTUAL WILL OF JOHN C. GOULD AND AIMEE J. GOULD."

The codicil provided, in part: "That we, JOHN C. GOULD and AIMEE J. GOULD . . . do hereby make, publish and declare this instrument, jointly as well as severally, to be a CODICIL to our JOINT AND MUTUAL WILL, dated the 8th day of June, 1945, and by so doing we hereby republish our said JOINT AND MUTUAL WILL as modified by this CODICIL:

"FIRST: We hereby amend subdivision 2) of section b) of paragraph THIRD of said JOINT AND MUTUAL WILL so that the same will read as follows:

"2) One-half thereof shall go to the following persons, who are relatives of Aimee J. Gould, and said one-half shall go to said persons or the survivor or survivors of them, share and share alike: . . . [the names, relationship, and ages of a *sister*, two nephews, and a niece are here stated in the codicil]." (The codicil added the name of Mrs. Gould's sister as a beneficiary under the will.)

Aimee J. Gould died January 19, 1960. The will and codicil were admitted to probate as her will, and John C. Gould was appointed executor.

The report of the inheritance tax appraiser stated that the property listed in the inventory was appraised at $16,671.45; that property held in joint tenancy with Mr. Gould was appraised at $227,892.27; and that "Additional Assets" were appraised at $12,543.30.

The property listed in the inventory consisted of accounts in four savings and loan associations, which accounts were in the name of Aimee J. Gould. The property listed as "Joint Tenancy Assets" consisted of a bank account, a promissory note, accounts in two savings and loan associations, and stock

in six corporations. The "Additional Assets" consisted of accounts in four savings and loan associations, which accounts were in the name of John C. Gould.

The report stated further, as follows: The clear market value of all the property listed in the report (after deducting certain expenses) was $252,754.31. The interest of John C. Gould in the property was a "Life Est. in All Property," and the appraised value of his interest was $52,411.32 and it was exempt from taxation. The interest of each niece and nephew, and the sister of Mrs. Gould, in the property was "⅛ Rem. Int. in L. E." (presumably the abbreviated recital meant a one-eighth remainder interest after the termination of a life estate in John C. Gould), which interest of each of said eight persons was appraised at $25,042.87.

The appraiser computed the tax on the interest of each alleged remainderman by allowing an exemption of $50, and taxing the balance at the rates stated in section 13407 of the Revenue and Taxation Code (10 per cent on $25,000, and 15 per cent on $42.87). He computed the tax on the interests of the sister, niece, and nephews of Mrs. Gould by allowing an exemption of $2,000 on each interest, and taxing the balance at the rates stated in section 13405 of said code (5 per cent on $25,000, and 7 per cent on $42.87). As above indicated, the total tax claimed in the estate of Mrs. Gould was $14,617.22, and that amount was based upon alleged interests of remaindermen in the estate of Mrs. Gould after an alleged life estate therein of her husband, John C. Gould.

Mr. Gould, as executor, filed objections to the report on the grounds that: (1) The inheritance tax appraiser erroneously treated the matter as if a life estate had been created in which the surviving spouse was the life tenant and the other eight persons mentioned in the will were remaindermen. (2) In determining the tax, the appraiser erroneously considered Mr. Gould's interest in the community property as a part of the life estate. (3) The appraiser considered the matter as if a testamentary disposition had been made of the community property interest of Mr. Gould. (4) The appraiser erroneously "exempted as property being inherited by" Mr. Gould property of the value of $52,411.32, whereas the value of his community property interest in the property was $126,377.15. Mr. Gould stated in his written "objections" that he contended that no life estate was created; that neither Mr. nor Mrs. Gould intended or contemplated creating a life estate; and that the will does not indicate that they intended

to create such an estate. He also stated therein that he contended that none of the property in the estate is subject to an inheritance tax for the reason that all the property in the estate and all joint tenancy property were community property of Mr. and Mrs. Gould; that pursuant to the will all such property was left to Mr. Gould as his separate property "to be enjoyed by him as he should desire and deem best, and with full power to use and enjoy the same without being responsible or accountable to any person or persons for any part or portion thereof"; and that by the use of such language in the will (language just quoted) the parties specifically intended that no life estate be created.

At the hearing on the objections, Mr. Gould was called as a witness in his own behalf, and he was asked by his attorney if he, Mrs. Gould, and their attorney (Mr. Pool) had a conversation, prior to the time the will was signed, regarding the effect of the will in the event of the death of Mr. or Mrs. Gould. When the witness replied in the affirmative, his attorney asked him to state the conversation. Then the attorney for the appellant (controller) said: "I object to that. I don't know what counsel is trying to prove. Maybe if I did I could stipulate to it. But any conversation is totally irrelevant to any issue in this case unless there is any ambiguity in the Will that they are trying to construe. I don't know whether there is any ambiguity or what he is trying to prove, so I object to that testimony." Mr. Gould's attorney said that the purpose of the testimony was "to prove that there was a contract that either one [Mr. or Mrs. Gould] could revoke the Will if they saw fit so to do." The objection was overruled. Then Mr. Gould testified that, at the time his attorney was "drawing up the Will," the attorney asked Mrs. Gould the following question: "Suppose Mr. Gould marries a blond after you're dead, if you should die first, and changes the Will to her benefit?"; and that she replied "that she would have the same privilege, too. So it wouldn't make any difference." He testified further that he and Mrs. Gould never had any conversation in which the subject of revocation of the will was discussed other than the conversation above stated.

The court found that at the time of the death of Mrs. Gould, on January 19, 1960, the status of the property owned by both of them (Mr. and Mrs. Gould) was as follows: Property standing in their joint names was of the value of $227,892.27; property in the name of Mrs. Gould was of the value of $16,671.74; and property in the name of Mr. Gould was of the value of $12,543.30.

The court also found that the value of all the property owned by them was $257,107.31; that all of said property was the community property of Mr. and Mrs. Gould; that the appraiser in determining the inheritance tax relied upon the theory that, by the terms of the will, Mr. and Mrs. Gould intended to create and did create a trust or life estate in all of the said property, in which trust or life estate Mr. Gould was the life tenant and the other persons (nieces, nephews, and sister), mentioned in subdivisions 1 and 2 of subparagraph (b) of paragraph "THIRD" of the will and codicil, were the remaindermen. The court also found that at the time of the execution of the will Mr. and Mrs. Gould entered into an oral agreement in which they provided that either of them had the absolute power and right to, and could, revoke the will after the death of the other; that neither intended to create a life estate or trust in all or any part "of their property"; that pursuant to the terms of the will they did not create a life estate or trust in all or any part of their property; they intended that upon the death of either of them, the survivor was to become the sole and absolute owner of all their property, and that the survivor could, if he or she so desired, change, amend or revoke the will; and that, upon the failure of the survivor to so revoke, change or modify the will, then and in that event any property which remained "in the hands" of the survivor upon his or her death would go to the persons (nieces, nephews, and sister) named in the subsections of subparagraph (b) of paragraph "THIRD" of the will and codicil.

Appellant (controller) argues to the effect that under the will, which was admitted to probate in the Estate of Aimee J. Gould, the right of Mr. Gould with respect to all the property which he and Mrs. Gould had theretofore owned (including joint tenancy property, community property, and property standing in his name) was limited to a life estate (during his life) with the right "to consume" for limited uses; and that upon his death all property then in the estate would be distributable to the nieces, nephews, and sister as remaindermen under the will of Mrs. Gould. He argues further that, "upon the death of the first to die," the will disposed of all the property of both of them by creating only a life estate in the survivor and immediately vesting the remainder, for inheritance tax purposes, in the nieces, nephews, and sister; that the will of Mrs. Gould disposes of all the community property (including joint tenancy property) and all the assets of

both spouses, and therefore the rights of the remaindermen *now* flow from her will and cannot be affected by any other or subsequent will of the husband, Mr. Gould; that the interests which the remaindermen "*now* contingently become legally entitled to *ultimately* take," under Mrs. Gould's will upon the death of Mr. Gould, are now taxable in this proceeding in her estate; that all the property is community property and therefore the life estate interest which Mr. Gould takes under Mrs. Gould's will is exempt from inheritance tax.

The position of appellant is that the will included provisions which were in effect a contract between Mr. and Mrs. Gould whereby they changed all their property to community property and agreed that, upon the death of either of them, the only interest the survivor would then have in their property would be a life estate with a limited right to consume, but with no right to otherwise dispose of any part of the property they had theretofore owned; and that the remainder after the life estate would vest in the said relatives as remaindermen.

The title of the will includes the words "Joint and Mutual Will," but the word "mutual" is not in the body of the will. In the first paragraph of the will the makers state that the instrument is "jointly as well as severally" their last will.

The title of the codicil includes the words "Joint and Mutual Will," and the word "mutual" is in the body of the codicil—where the makers refer to the will as their "Joint and Mutual Will."

Definitions of, and legal principles relating to, a joint will, mutual wills, and a joint and mutual will are stated in *Daniels* v. *Bridges*, 123 Cal.App.2d 585 [267 P.2d 343], at pages 588 and 589. It is there stated: "A joint will is a single testamentary instrument constituting or containing the wills of two or more persons, and jointly executed by them as their respective wills. It is not necessarily either mutual or reciprocal. It is, in legal effect, the separate will of each of the persons executing it. The fact that it is executed by both or all of such persons does not affect its validity or effect as the will of any one of them. Mutual wills are the separate wills of two or more persons which are reciprocal in their provisions. A joint and mutual will is one instrument executed jointly by two or more persons, the provisions of which are reciprocal. Each will, in one instrument, is a unilateral act, and its execution creates no rights in the legatees or devisees, as the

will is ambulatory until the death of the testator. A joint or mutual will may be revoked by any of the testators in like manner as any other will.'' (Footnote references, to citations, in this quotation have been omitted.)

''A person may contract to make a particular disposition of his property by will,'' but the contract must be in writing; and such a contract may be in a mutual will. (*Daniels* v. *Bridges, supra,* p. 589.) ''The mere fact that a joint will contains reciprocal, or similar or identical, provisions is not of itself sufficient evidence of a contract, nor is it enough to establish a legal obligation to forbear revocation in the absence of a valid contract.'' (*Ibid.*)

▮▮▮ The will did not include provisions sufficient to constitute a contract for the disposition of the property. No restriction was placed upon the survivor with respect to the use or disposition of the property, and it was expressly provided in the will that the survivor should have unrestricted and unlimited use of the property. As above noted, the ''THIRD'' paragraph of the will provided that the property should be held by the survivor during lifetime as his or her separate property, and the principal and income should be enjoyed by the survivor as he or she should deem best during the life of the survivor with full power to use the same as his or her own property without being accountable to any person for any part thereof. There was no provision in the will that it could not be revoked, and there was no evidence of an agreement not to revoke it. On the contrary, the testimony of Mr. Gould, regarding the conversation as to the right of the survivor to change the will, indicates that there was no agreement not to revoke. ▮▮▮ The testimony of Mr. Gould on that subject was admissible on the basis that the will was ambiguous as to the interest to be acquired by the survivor. There is a statement in the will that the survivor shall hold the property as his or her separate property during his or her lifetime with the unrestricted right to use the principal and income as his or her own property without accounting to anyone therefor. There is another statement therein that upon the death of the survivor, any property remaining shall be distributed to certain relatives. As above shown, Mr. Gould's testimony, regarding such conversation, was in substance that while the attorney was preparing the will he said to Mrs. Gould: ''Suppose Mr. Gould marries a blond . . . and changes the Will to her benefit?''; and that Mrs. Gould replied that she would have the same privilege and it would

not make any difference. Such parol evidence was material in determining the intent of the makers of the will.

In *Halldin* v. *Usher*, 49 Cal.2d 749 [321 P.2d 746], Henry Halldin and May Halldin, husband and wife, executed an instrument which stated that they "agree that in case of the death the one that survives shall have whole control of our property," and that "when both of us are gone" the property "at Magnolia Ave., Los Angeles shall in equal parts go to our children," but "property . . . Ritos Vista Ave. . . . and the lot in San Clemente go to our son T. A. Halldin as his special share besides his share in the Magnolia Ave. property." In that case, after the death of the husband, the wife sold the Magnolia property, and the son commenced the action seeking declaratory relief to the effect that the said instrument signed by his parents was a contract for the benefit of the children. It was held therein that parol evidence was admissible in determining whether the parties intended the instrument to be a contract for the benefit of the children or to be a testamentary instrument. In that case, the trial court found that the instrument was intended as a testamentary instrument and not as a third party beneficiary contract. It was said therein (p. 752) : "The question of the intention of the parties as to the effect of the instrument as a contract or as a testamentary instrument is a question of fact." The judgment of the trial court, in favor of the defendants, was affirmed.

In *Van Houten* v. *Whitaker*, 169 Cal.App.2d 510 [337 P.2d 900], which pertained to the interpretation of a joint will of husband and wife, the trial court interpreted the will without the aid of parol evidence and rendered judgment to the effect that there was a contract for the benefit of third persons (plaintiffs). It was said therein (p. 517) : "Had such parol evidence [as to whether the document was intended as a will or as a third party beneficiary contract] been forthcoming in the case at bar, the trial court's decision might or might not have been different."

In the present case the court found, as above stated, that Mr. and Mrs. Gould orally agreed that either of them had the right to revoke the will after the death of the other; that they did not intend to, and they did not, create a life estate; that they intended that upon the death of either of them, the survivor was to become the sole and absolute owner of all their property, and the survivor could change or revoke the will, and that upon the failure to so change or revoke it,

then any property remaining in the hands of the survivor should go to the relatives so designated. It was a question of fact for the trial court as to the intent of Mr. and Mrs. Gould in making the will.

In determining the intent of the makers of the will, other important factors for the consideration of the court (in addition to such parol evidence) were: The principal part of the property owned by the Goulds was held by them in joint tenancy, namely, property of the value of approximately $228,000. That property was not a part of the probate estate and would vest in the survivor as his or her property. Property of the value of approximately $16,600 stood in the name of Mrs. Gould. Property of the value of approximately $12,500 stood in the name of Mr. Gould. It was conceded that all the property was acquired with community funds. Under the contract theory, asserted by the appraiser, it would seem that Mr. and Mrs. Gould intended that upon the death of one of them the other one would immediately be divested of the joint tenancy property and also his community property interest in the other property ($16,600 or $12,500), subject to a restricted right "to consume" for limited uses during the survivor's lifetime. Under the facts herein, the trial court was not required to adopt that theory or view which in practical effect would immediately render the survivor financially dependent upon the generosity of the remaindermen as to the part of the property he would be allowed to consume. Also under the appraiser's theory, that all of the property was to be distributed under Mrs. Gould's will, a practical effect would be that Mr. Gould's property (joint tenancy and community property interests) would be included in probate proceedings while he was living.

The findings are supported by the evidence. The will was revocable by the survivor.

The order appealed from is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 21, 1962.