[L.A. No. 29814. In Bank. Feb. 11, 1971.]

Estate of LOTTIE G. COHEN, Deceased.
HOUSTON I. FLOURNOY, as State Controller,
Petitioner and Appellant, v.
PHILIP COHEN et al., Objectors and Respondents.

---

---

**COUNSEL**

Myron Siedorf, Walter H. Miller, Phyllis Kelly Fairbanks and James R. Birnberg for Petitioner and Appellant.

Horowitz & Howard and Fred Horowitz for Objectors and Respondents.

---

**OPINION**

**MOSK, J.**—The Controller of the State of California appeals from a judgment sustaining respondents' objections to the imposition of inheritance tax on the assets of a trust. We construe for the first time the provisions of the Revenue and Taxation Code enacted in 1965 to govern the imposition of inheritance taxes on transfers of community property between spouses.

On May 4, 1944, Philip Cohen, then aged 69, and his wife Lottie, aged 64, entered into two declarations of trust by which they transferred substantially all of their community property to Union Bank, as trustee. Lottie was the sole trustor of one of the trusts, designated P.9020, and no issue is raised regarding the taxation of its assets. The other trust, P.9021, to which was transferred the bulk of Philip's and Lottie's community property, was executed by both husband and wife, and it is the taxation of the assets of this trust which raises the issue before us.

Trust instrument P.9021 provides in part that the "net income [of the trust] shall be distributed in quarterly or other convenient installments, to or for the benefit of the Trustors [Philip and Lottie] during their joint lifetime, and to the survivor of them thereafter"; in the event that Philip predeceases Lottie, part of the principal of the trust shall be distributed to certain persons designated in the trust; "[i]n the event Lottie G. Cohen dies before the death of Philip Cohen, no distribution of any of the corpus of this trust shall be made at her death"; and in the event of the death of Philip after the death of Lottie, distribution of the full amount of the principal of the trust shall be made to certain persons designated in the trust instrument. The declaration further provides as follows: "The Trustors,

or the survivors [*sic*][1] of them, by written instrument filed with the Trustee, may revoke this trust, in whole or in part. . . . The Trustors, or the survivors [*sic*] of them, by written instrument filed with the Trustee may alter or divest the interest of, or change beneficiaries and with the Trustee's written consent, amend this trust without limitation in any other respect. Amendments may be cancelled or amended in like manner."

On March 31, 1967, Lottie Cohen died. Pursuant to the declaration of trust, Philip became entitled to receive all of the income from the trust for his lifetime, and, if he chose, he could revoke or amend the trust without limitation. All of the assets of the trust were the community property of Philip and Lottie, and, at the date of Lottie's death, consisted of shares of stock in 63 corporations, valued at $1,270,680.76.

At the hearing to determine Philip's liability for inheritance taxes on the assets of trust P.9021, Philip testified over objection[2] that the purpose of the trust was to relieve him of the burdensome duties attendant to management of the large stock portfolio he and Lottie had acquired with community funds. He stated unequivocally that neither he nor Lottie intended to create a life estate in any respect in the survivor of them; they both intended that, on the death of one, the survivor would own all of the assets of the trust absolutely and without limitation.

The trial court held that when Lottie Cohen died the assets of trust P.9021 vested in Philip in fee, free of any limitation, and were exempt from inheritance taxation.[3] The Controller appeals, maintaining that Revenue and Taxation Code section 13694 requires taxation of a portion of the value of the trust assets. We conclude that the Controller's contention is meritorious and the trial court's judgment must be reversed.

Revenue and Taxation Code section 13554, as amended in 1965, provides: "Where community property is transferred within the provisions of Chapter 4 of this part [covers all transfers subject to inheritance taxation, including transfers by will or succession and *inter vivos* transfers] other than by will or the laws of succession from one spouse to the other, the property transferred is not subject to this part except as provided in Section 13694." Section 13551, also amended in 1965, provides an

---

[1]The parties to this action agree that the word "survivors" should have been "survivor," since there were only two trustors.

[2]The Controller's objection that this testimony was not admissible under the parol evidence rule was overruled.

[3]With respect to the assets of trust P.9020, the court imposed an inheritance tax of $4,916.66. In addition, a "pickup" tax of $16,478.23 was imposed pursuant to Revenue and Taxation Code section 13443. Respondents paid the total tax of $21,394.89 on April 14, 1969, and neither party has objected to this part of the court's decree.

identical exemption for transfers by will or succession: "Upon the death of a spouse: (a) None of the community property transferred to a spouse is subject to this part, except as provided in Section 13694. (b) All of the decedent's half interest in the community property passing to anyone other than the surviving spouse is subject to this part." Thus, transfers of community property between spouses, whether *inter vivos* or by will or succession, are exempted from the application of the inheritance tax laws except as provided in section 13694.

The pivotal statutory language, enacted in 1965, appears in section 13694: "Except as otherwise provided in this article, a gift of a general or limited power of appointment made in conjunction with a disposition of property otherwise subject to this part . . . is a transfer subject to this part from the donor to the donee at the date of the donor's death, *except that if a power of appointment over any portion or all of the donor's half interest in community property is given to the donor's spouse, the value of any interest, other than the power itself, given the donee in such property subject to such power, up to but not exceeding the value of a life estate therein of the donee, is not subject to this part.*" (Italics added.)[4]

■ A reading of sections 13551, 13554, and 13694 makes evident, at the outset, that a transfer of community property *in fee* from one spouse to another, by will, succession or otherwise, does not subject the recipient spouse to the payment of inheritance taxes. The italicized portion of section 13694, which pertains to transfers of community property between spouses, applies only to transfers of less than a fee interest, i.e., transfers of powers of appointment. ■ Literally construed, the relevant language of section 13694 provides that, when a decedent spouse conveys to a surviving spouse a general or a limited power of appointment over all or any portion of the decendent spouse's half interest in the community property, the surviving spouse will be liable for inheritance taxes levied on the value of the property subject to the power in excess of the value of a life estate in the decedent spouse's half of the community property. ■ Thus, if a surviving spouse received a life estate in the decedent spouse's half of the community property and a power to appoint the remainder, inheritance tax would be levied only on the value of the remainder interest.

The foregoing literal construction of the language of section 13694 is

---

[4]Section 13694 was amended in the 1970 legislative session and the following paragraph was added: "A transfer in trust wherein the trustee, under the terms of the trust, is granted a power limited to making discretionary payments of principal or income for the benefit of a trust beneficiary (or beneficiaries) other than the trustee, is a transfer to the trust beneficiary (or beneficiaries) within the meaning of Section 13306 and is not a power of appointment within the meaning of this section." The new language is of no significance to the case at bar.

consistent with the views expressed by the only two Courts of Appeal to consider the meaning of the section. In *Estate of Morse* (1970) 9 Cal.App. 3d 411, 417-418 [88 Cal.Rptr. 52], the court, having determined that the surviving spouse received a life estate in her husband's half of the community property and a power to appoint the remainder, proceeded to apply section 13694: "This section has been uniformly interpreted to mean that a gift of a power of appointment over a deceased husband's community interest in the community property of the spouses, when coupled with a gift to the widow of an additional interest in such property, is taxable under the Inheritance Tax Law only to the extent that such interest exceeds a life estate in the property. [Citations.] We hold that the proper application of section 13694 in this case requires that the clear market value of [the surviving spouse's] life estate in the residue of her deceased husband's estate be excluded from the taxable portion of the estate and that the transfer of the residue be taxed solely to her. . . ." Similarly, in *Estate of Legatos* (1969) 1 Cal.App.3d 657, 663 [81 Cal.Rptr. 910], the Court of Appeal stated: "Taxes now are imposed by section 13694 on the value in excess of a life estate in the donor's half interest in community property which is subject to the surviving spouse's power of appointment. . . ."

One influential commentary on the impact of the 1965 amendments to the Revenue and Taxation Code suggests a contrary interpretation of the language in section 13694: "Under new § 13694 only the value of any community property over which the surviving spouse is given a power of appointment is subject to inheritance tax unless the wife is given an interest in the property in addition to the power of appointment." (Review of Selected 1965 Code Legislation (Cont.Ed.Bar), p. 242.) The qualifying provision implies that conveyance to a spouse of a power of appointment over community property coupled with an interest in the property subject to the power is not taxable under section 13694. As apparently construed by Continuing Education of the Bar, no inheritance tax is imposed on community property conveyed from one spouse to the other unless the surviving spouse receives only a power of appointment over the decedent spouse's half of the community, and nothing more; so long as the surviving spouse receives some interest in addition to the power of appointment, e.g., a life estate, no tax is levied.

The basis for C.E.B.'s interpretation is unclear, but certainly the language of section 13694 does not support such construction. The section exempts from taxation only "the value of any interest, *other than the power itself,* given the donee . . . up to but not exceeding the value of a life estate. . . ." (Italics added.)

Furthermore, virtually every other commentator contrues section 13694

as not exempting from taxation a power of appointment merely because it is coupled with a life estate or some other interest in the property subject to the power. Thus, Judge Arthur K. Marshall, in his treatise on state and local taxation, declares: "All community property passing inter vivos or via will outright from one spouse to the other passes free of inheritance tax. If, however, the surviving spouse is given a general or limited power of appointment over community property, such transfer is subject to inheritance tax to the extent that the transfer exceeds a life estate therein.

"Example: H. by will, leaves his one-half of the community property in trust, giving W the income for life and a limited power to appoint the remainder among the issue of the spouses. The value of the income or life interest passes tax free but the value of the remainder interest is taxed as a transfer to W." (Marshall, California State and Local Taxation (1969) § 474, p. 404.)

In a similar vein, Hewitt and Ward discuss the impact of section 13694 in the following language: "If the decedent's spouse is bequeathed a life estate and a power of appointment over a portion or all of the decedent's interest in the community property, only the value of the power of appointment given to the wife [spouse] is subject to inheritance taxation." (Hewitt and Ward, California and Federal Estate and Tax Planning (1968) ch. VII, § 95, at p. 165.) And two members of the state bar who were active in the development of the 1965 tax reform proposals describe the tax consequences of section 13694 in this manner: "If, in addition to the income, the husband gives the wife a power of appointment, there may be some tax because the value of the property subject to the power, after exempting the life estate, will be taxed to the wife." (Martin and Miller, *Estate Planning and Equal Rights* (1965) 40 State Bar J. 706, 708; see also Witkin, Summary of Cal. Law (1969 Supp.) at pp. 1184-1185.)

Thus, our task is to determine the precise nature of the interest received by Philip upon the death of his wife and the inheritance tax consequences of the transfer, if any. On the death of Lottie, no corpus was to be distributed to Philip; and he was to receive the full income from the trust assets for life. After Philip's death, the property was to be conveyed to designated beneficiaries, but Philip retained the power to alter or divest the interests of the beneficiaries or revoke the trust in any manner he chose. Respondents contended and the trial court agreed that neither Philip nor Lottie intended to create a life estate in their survivor and that, when Lottie died, Philip became the absolute owner of the trust assets. Therefore, it was held, no inheritance tax could be levied on the assets of trust P.9021 because Philip did not receive a power of appointment over his wife's half interest in the community property.

The Controller maintains that respondents and the trial court overlooked the definitions of powers of appointment under the California Inheritance Tax Law. A general power of appointment for inheritance tax purposes was defined in 1965 in Revenue and Taxation Code section 13692: " 'General power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate. . . ."[5] A limited power of appointment is "a power which does not qualify . . . as a general power of appointment." (Rev. & Tax. Code, § 13693.) The Controller asserts that Philip's power to revoke or amend the trust and thus to dispose of the corpus of the trust to anyone he chose, including himself, was a general power of appointment.

The broad definition of a general power of appointment adopted by the California Legislature in 1965 conforms to the definition which has been applied for many years by federal estate tax authorities. (See 26 U.S.C.A. § 2041, subd. (b)(1).) ▮ Indeed, one of the purposes of the California legislative amendments to the Inheritance Tax Law in 1965 was to conform the taxation of powers of appointment under California Inheritance Tax Law to the practice under the federal estate tax laws. (40 State Bar J. (1965) at pp. 600, 606-607.) Two commentators advised the State Bar: "After September 17, 1965 [the effective date of the amendments to the Revenue and Taxation Code, including sections 13551, 13554, 13692, and 13694], the tax aspects of the possession of a general power of appointment will be the same for Federal and for California purposes. . . . The California taxing authorities will now be able to rely on Federal interpretations for taxation of powers of appointment." (Martin and Miller (1965) *supra,* 40 State Bar J. 706, 709; see also Marshall, California State and Local Taxation (1969) *supra,* § 477, at p. 423; Hewitt and Ward, California and Federal Estate and Tax Planning (1968) *supra,* ch. VII, §§ 91, 95, at pp. 158, 165; Powell, *Powers of Appointment in California* (1968) 19 Hastings L.J. 1281, 1291.)

If we look to the federal practice for guidance, it is clear that Philip's power to revoke the trust is a general power of appointment. Treasury regulation section 20.2041-1(b)(1) provides as follows: "The term 'power of appointment' [as used in 26 U.S.C. § 2041, subd. (b)(1)] includes all powers which are in substance and effect powers of appointment regardless

---

[5]Revenue and Taxation Code section 13305 defines a "decedent" to include "any person by or from whom a transfer is made," and thus limits the application of the word to donors; donees are not included. However, section 13302 states the obvious proposition that definitions should not apply "where the context otherwise requires," and it is clear that the reference to powers of appointment in section 13694 was intended to apply to donees of the power and not simply to decedent donors. (See *Estate of Morse* (1970) *supra,* 9 Cal.App.3d 411, 415, fn. 2.)

of the nomenclature used in creating the power and regardless of local property law connotations. For example, if a trust instrument provides that the beneficiary may appropriate or consume the principal of the trust, the power to consume or appropriate is a power of appointment. *Similarly, a power given to a decedent to affect the beneficial enjoyment of trust property or its income by altering, amending, or revoking the trust instrument or terminating the trust is a power of appointment.*" (26 C.F.R. § 20.2041-1 (b)(1).) (Italics added.)

Furthermore, a reasoned approach to the meaning of a general power of appointment supports the Controller's contention that Philip held an estate for life plus a general power of appointment. ■ The definitions of a general power of appointment adopted under both California and federal tax law are based on the notion that the holder of the power has the right to determine the ultimate recipient of the property subject to the power and may, if he chooses, appoint the property to himself. ■ On the death of Lottie, no corpus was to be distributed to Philip and he was to continue to receive the income from the trust assets for life. After his death, the property was to go to designated beneficiaries. But Philip retained the power to appoint the corpus of the trust to any person of his choosing, including himself, by altering the interests of the beneficiaries or revoking the trust. Thus, Philip held a normal life estate and a general power of appointment.[6]

The two recent Court of Appeal opinions referred to above are persuasive authority in support of the Controller's assertion that Philip received a life estate and a general power of appointment, and not a fee interest. In *Estate of Morse* (1970) *supra,* 9 Cal.App.3d 411, a husband and wife executed a joint and mutual will providing that, on the death of one, the entire residue of their community property would pass to the other. When the survivor died, any of the estate remaining was to pass to designated beneficiaries. The survivor, during the life of the beneficiaries, was not free to revoke the will. The issue before the court was whether the survivor's interest

[6]Judge Marshall explains that a power of appointment "may be created by provisions which on their face do not appear to be concerned with distribution or disposition of property. Thus, a power of appointment may be created by the provisions of [a] trust which pertain to amendment, revocation or termination.

"Example 10: D leaves property to T in trust to pay the income to L for life or until earlier termination of the trust, the remainder at L's death or earlier termination to go to R. D also gives R power to terminate the trust at any time. R has a general power of appointment." (Marshall, California State and Local Taxation (1969) *supra,* § 477, at p. 429.)

See also *Pittsburgh National Bank* v. *United States* (W.D.Pa. 1970) 319 F.Supp. 176.

in the community property was subject to inheritance taxation under section 13694.

After citing the same legislative history upon which the Controller relies, the Court of Appeal in *Morse* quoted treasury regulation 20.2041-1(b)(1) for the proposition that the survivor's power to consume all or any portion of the residue of the estate was a power of appointment under California law. The court also held that the survivor received an estate in addition to the power of appointment—an estate greater than a normal life estate and less than a fee. The estate was greater than a life estate because the survivor might consume the entire residue during his lifetime and because his interest might become a fee on the death of the designated beneficiaries; the survivor held less than a fee because he could not dispose of his interest during life except by consumption and because he had no present power to dispose of it at death.

*Morse* is persuasive, despite its distinguishable facts, for its reliance on the same treasury regulation and legislative history cited to us by the Controller. Also, in *Morse* the survivor held a combination of interests almost equivalent to a fee, but the court nevertheless recognized that, for inheritance tax purposes, the survivor held a general power of appointment coupled with a life estate.

In *Estate of Legatos* (1969) *supra,* 1 Cal.App.3d 657, the Court of Appeal considered facts similar to those in the case at bar. The decedent husband's will provided that, upon his death, his share of the community property should pass to a trustee, who was directed to pay the income from the trust property to the decedent's wife for her life. The trustee also was to apply the principal of the trust estate as the decedent's wife directed in writing or as necessary for her care. Anything remaining upon the death of the wife was bequeathed to designated beneficiaries, but the wife was given the power to revoke or amend the beneficiary clause. The question before the court was the taxation of the surviving wife's share of the community property under former section 13551, which provided that the husband's half of the community property when given to his surviving wife was taxable on his death if the wife received either a life estate or a power of appointment or both. Under the provision, no tax was levied against the surviving husband on the death of his wife, regardless of the interest he received in his wife's half of the community property.

Although *Legatos* held that former section 13551 was an unconstitutional violation of the equal protection clause, the court could not reach the constitutional question without first deciding whether the statutory section on its face could apply to the facts—whether the surviving wife had received

less than a fee interest, i.e., a life estate and/or a power of appointment. The court declared: "We must reject the contention that [the surviving wife's] power to demand the conveyance of the corpus to her converted her interest into a fee estate. This contention has been made frequently and rejected by the California courts. . . . The decree of preliminary distribution recognized and affirmed her right after the trust was set up to demand and receive the corpus, and thus to terminate the trust. . . . In doing so the probate court properly held she was liable for the inheritance tax, if the language of Revenue and Taxation Code section 13551, subdivision (a), can [constitutionally] be held applicable." (*Id.* at p. 660.)

Thus, the court in *Legatos* recognized that the surviving spouse owned less than a fee estate, though she held a combination of powers equivalent to a fee. Like Philip Cohen, the surviving spouse in *Legatos* was the beneficiary of a trust to pay the income to her for her life. In addition, both Philip and the survivor in *Legatos* had the power to terminate the trust, consume the corpus, and revoke the beneficiary clause. The court in *Legatos* determined that section 13551 was applicable on its face because the survivor had received a life estate coupled with a power of appointment, within the language of the section.[7]

Respondents rely on *Estate of Gould* (1962) 199 Cal.App.2d 372 [18 Cal.Rptr. 607]. In *Gould* a husband and wife had executed a mutual will which conveyed to the survivor all the principal and income of their community property with full powers of use and enjoyment. On the death of the survivor, any property remaining was bequeathed to designated beneficiaries, but the trial court found that the will was revocable by the survivor. The question before the Court of Appeal was whether, after one of the spouses died, the designated beneficiaries were subject to inheritance tax on their contingent interests. The *Gould* court concluded that the beneficiaries could not be taxed because they received no vested interests on the death of the first spouse, since the survivor might consume the corpus and/or revoke the will. The court held that the terms of the will made the survi-

---

[7]See also *In re Lewis* (1969) 271 Cal.App.2d 371, 377 [76 Cal.Rptr. 289], in which the court stated: "It is well settled that a bequest or devise to a surviving spouse in general terms, without stating whether it is a fee or life estate, with broad powers of enjoyment or disposition, but with a gift over to subsequent takers of what remains on the death of the survivor, should be construed to create a life estate and not a fee in the survivor." Also, this pertinent language from *Ellis* v. *United States* (D.Md. 1968) 280 F.Supp. 786, 793, should be noted: "There is little doubt that the donee of a general power of appointment exercisable by deed or will can deal with the property subject to such power as if he had absolute ownership. . . . The fact that the donee of such a power might possess all the incidents of a fee is clearly irrelevant [for tax purposes] if under state law the interest in question is in fact a power of appointment."

vor the sole and absolute owner of the property, just as if he owned the property in fee and had written a revocable will.

Respondents' reliance on *Gould* is misplaced because the case is distinguishable in several important respects. First, the inheritance statutes applicable in *Gould* preceded the 1965 amendments by which California adopted the federal approach to powers of appointment. Second, the question in *Gould* was the taxation of the beneficiaries, rather than the taxation of the surviving spouse. Third, the survivor's interest in *Gould* was greater than that received by Philip: the survivor held full power to use and enjoy the income and corpus, subject only to a gift over in a revocable will; Philip received only a right to receive the income for life and a power, if exercised, to revoke the trust.

We conclude that the trial court's judgment pertaining to the taxation of trust P.9021 must be reversed. ■ Upon the death of his wife, Philip Cohen received a life estate in his decedent spouse's half of their community property; in addition, by virtue of his power to revoke or amend the trust in its entirety, Philip held a general power of appointment over all of his decedent spouse's half of the community property. Therefore, Revenue and Taxation Code section 13694 imposes inheritance tax on the value of that half of the trust assets in excess of the value of Philip's life estate.

We are aware that the sum of the incidents of ownership held by Philip on the date of his wife's death was in many respects the equivalent of a fee interest. And we agree with respondents that no inheritance tax would have been due on the assets of trust P.9021 if Philip had in fact received the assets of the trust in fee. Nevertheless, the impact of section 13694, as reasonably construed, may not be circumvented. ■ The Legislature, by virtue of that section, sought to limit the community property exemption to transfers between the spouses and to impose a tax on that portion of the decedent spouse's half of the community property passing to anyone other than the surviving spouse. ■ When the surviving spouse receives a life estate in the decedent's half of the community property coupled with a limited or general power of appointment, the value of the gift in excess of the value of the life estate may be destined for others than the surviving spouse and should be taxed; that is especially the case when the power of appointment is limited. ■ The only possible inequity in the application of the section occurs when the nature of the life estate and the general power of appointment is such that the surviving spouse receives the substantial equivalent of a fee.

Had it elected to do so, the Legislature might have enacted section 13694 in a manner to avoid possible inequities in cases involving estates in sub-

stance the equivalent of a fee.[8] However, the California Legislature chose not to draw such an exception and determined instead to treat in the same manner all conveyances of less than a fee interest. We are not empowered to alter that valid legislative choice.[9]

Finally, we note that the trial court, in reaching its erroneous determination that Philip received the trust assets in fee when his wife died, relied on extrinsic evidence admitted to prove that neither Philip nor Lottie intended to create a life estate or a power of appointment in the survivor. ▮▮▮ Because we hold, as a matter of law, that the trust instrument created in the survivor a life estate and a general power of appointment, it follows that extrinsic evidence was not admissible to show that the trust instrument was intended to create a fee interest in the survivor. The language of the trust instrument was not "reasonably susceptible" of the meaning to which the extrinsic evidence was directed. (See *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641].)

The judgment is reversed and the cause is remanded to the trial court with directions to redetermine the amount of inheritance tax due in accordance with the views expressed herein.

Wright, C.J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

Respondents' petition for a rehearing was denied March 9, 1971.

---

[8]The federal estate tax provisions treat the conveyance to a surviving spouse of a life estate plus a power of appointment exercisable in favor of such surviving spouse in the same manner as the conveyance of a fee. (See 26 U.S.C. § 2056, subd. (b)(5).)

[9]Our opinion in *Estate of Rosecrans* (1971) *ante,* p. 34 [92 Cal.Rptr. 680, 480 P.2d 296] is not relevant to our disposition of the instant case. In *Rosecrans* we considered the scope of the separate property exemption under pre-1965 Inheritance Tax Law.