[Civ. No. 43721. First Dist.. Div. One. Mar. 15. 1979.]

Estate of CHARLES THORNDIKE, Deceased.
KENNETH CORY, as State Controller, et al.,
Petitioners and Respondents, v.
EDITH J. THORNDIKE, as Executrix, etc., Objector and Appellant.

**COUNSEL**

McCutchen, Doyle, Brown & Enersen and Robert A. Mills for Objector and Appellant.

Myron Siedorf and Edwin Rosenthal for Petitioners and Respondents.

**OPINION**

**DEAL, J.***—Appellant, Edith Jewell Thorndike, as executrix of the will of Charles Thorndike, deceased, has appealed from an order fixing inheritance tax.

*Assigned by the Chairperson of the Judicial Council.

The issue on appeal is whether the decedent-donee's appointment to his daughter, Mary Elaine Ware (a taker in default), of a lesser interest than she would have received in default of appointment is legally effective as an "exercise" of the limited power and therefore taxable to the taker as a transfer from decedent-donee. The court determined that the "exercise" of the limited power of appointment was complete and was taxable pursuant to Revenue and Taxation Code section 13695.

The facts, based partly on stipulation, are not in dispute. Charles Thorndike died on February 5, 1972, a resident of San Francisco, California. His will dated April 28, 1969, was admitted to probate, and his surviving spouse was appointed executrix. Decedent was a beneficiary of two trusts, one created under the will of his grandfather[1] and a trust with identical provisions created under the will of his grandmother. Both grandparents were residents of Massachusetts and died in 1910. Their wills were admitted to probate in Massachusetts. The creating instruments gave decedent a life estate in the income and a special (or limited) power of appointment to direct distribution of the income of the trust to his surviving spouse and lineal issue born in lawful wedlock; he could also transmit to his children a like power of appointment over the income. In default of appointment, the income is to be distributed equally among the grandchildren and the issue of any deceased grandchild by right of representation; the special power of appointment was transmitted to all lineal descendants.

Decedent had two children, Thomas Thorndike and Mary Elaine (Thorndike) Ware. Mary Elaine Ware qualified under the grandparents'

---

[1] By his will, admitted to probate in Massachusetts on August 29, 1859, Augustus Thorndike [I] created a trust under which Charles Thorndike [I] had a life estate and a limited power of appointment. Charles [I] (who is a donor in this proceeding) was also authorized to transmit by will to his children a like power of appointment which could be exercised only in favor of lineal descendants born in lawful wedlock and a spouse for so long as he or she remained unmarried. By his will admitted to probate in Massachusetts in 1910, Charles [I] exercised the limited power of appointment in favor of his spouse and his son, Augustus [II]. He transmitted to his son and all lineal descendants a like power of appointment to direct in what manner, upon what conditions and limitations and in what proportions the income of his share of the trust property would go to a surviving spouse and issue as though his respective share were in his own possession or control, free of any trust. Charles [I] also provided for vesting 20 years after the last survivor living at the time of his death and for the payment of income to lineal descendants in default of any appointment.

Apparently Augustus [II] did not exercise his power of appointment, and Charles [II], who is the decedent-donee in this proceeding, succeeded to the life estate with a limited power of appointment under the will of his grandfather, Charles [I]. The record does not reveal when the estate would have vested in the absence of decedent-donee's disposition.

trusts as "a lineal descendant born in lawful wedlock," and would be entitled to all the income of the trust as the "taker in default" if the power of appointment were not exercised by decedent. By article seven[2] of his will, decedent appointed two-thirds of the income interest to his spouse until her death or remarriage and one-third of the income interest to his daughter. Decedent also provided that on the death of his daughter the income shall go to her issue by right of representation, and he transmitted to her a "like power of appointment."

The inheritance tax appraiser's report shows the total value of the estate, after deductions, as $1,110,934.81, of which $565,494 is attributable to the value of the income interest in the grandparents' trusts. The surviving spouse's two-thirds interest in the income of the trusts was computed actuarily (she was assumed to have survived the decedent by 29 years) at $90,230.22, and the balance of $475,263.78 was determined to be the value of the daughter's interest in the appointive property. The surviving spouse does not claim to be a taker in default. All bequests to her qualified for the marital deduction, and no tax was assessed. A tax of $52,914.67 was assessed against Mary Elaine Ware, of which about 90 percent, or approximately $47,622, resulted from the inclusion of the appointive property. The inheritance taxes of $10,498.04 assessed against Thomas Thorndike and eight grandchildren are not challenged. The valuations are not in issue.

■ As stated in California Inheritance Tax Practice (Cont.Ed.Bar 1973) section 5.40, page 107, "Generally, a power of appointment is a power, conferred by the owner of property (donor) on someone else (donee or holder), to designate the person (appointee) who may receive the property (appointive property) at some future time. Civil Code § 1381.1. (A power retained by the owner is not treated as a power of

---

[2] Article seven states: "I hereby exercise both of the limited powers of appointment given me under the will of June 1, 1909, of my grandfather, Charles Thorndike, and under the will of April 20, 1906, of my grandmother, Mary E. Thorndike, and do hereby appoint the income of my share of the trust property under each of these trusts, two-thirds (⅔) to my wife, if she survives me, for her life or until her remarriage, and in the event of her death or remarriage, then to my daughter, Mary Elaine Ware. The other one-third (⅓) of the income of my share of the trust property under each of these trusts I appoint to my daughter, Mary Elaine Ware, for her life; and if my said daughter dies leaving issue born in lawful wedlock, then to her issue by right of representation. I hereby transmit to my said daughter a like power of appointment in respect to such share or shares of the income of said trust funds as I have enjoyed during the duration of said trusts, with only the restrictions and limitations as provided in said trusts and subject to the appointments hereinbefore made. I request the trustees of each of said trusts to advise the trustees of my revocable trust of the distributions made pursuant to the exercise of the powers of appointments as aforesaid."

appointment for inheritance tax purposes.) The donor usually also specifies who will be entitled to the property if the power is not exercised or if an attempted exercise is invalid. The person who becomes entitled to the property in such a situation is generally referred to as a taker in default of appointment." A general power of appointment is one which may be exercised in favor of anyone, including the donee, and is equivalent to a grant of absolute ownership. A special power is one which may be exercised in favor of certain specified individuals or to a class of designated persons, not including the donee or his estate. (Civ. Code, § 1381.2; *Estate of Conroy* (1977) 67 Cal.App.3d 734, 738 [136 Cal.Rptr. 807].)

The property subject to decedent's limited power of appointment was taxed under the authority of Revenue and Taxation Code section 13695: "Where a limited power of appointment given in conjunction with a disposition of property effected before 5 p.m. of June 25, 1935, by a donor who died prior to that date, is exercised after that date by the donee, the exercise of the power is a transfer subject to this part from the donee to the person appointed at the time of the exercise, as though the property to which the power relates belonged absolutely to the donee and is transferred by him by will."

Appellant does not challenge that "a limited power of appointment [was] given in conjunction with a disposition of property effected before 5 p.m. of June 25, 1935, by a donor who died prior to that date." She does challenge that the purported "exercise" was a taxable transfer.

Appellant relies on Civil Code section 1380.1 which provides: "Except to the extent that the common law rules governing powers of appointment are modified by statute, the common law as to powers of appointment is the law of this state." When the Law Revision Commission uses the term "common law," it is referring "to the contemporary and evolving rules of decisions developed by the courts in exercise of their power to adapt the law to new situations and to changing conditions." (Deering's Ann. Codes, coms. to Civ. Code, § 1380.1 et seq.)

Appellant contends that the common law provides that an exercise of a power of appointment is not an "exercise" (and therefore not taxable under Rev. & Tax. Code, § 13695) insofar as it benefits a taker in default. In support of her view of the common law, appellant cites Restatement of Property section 369: "Where the donee . . . appoints an interest to any person who is a taker in default, (a) if the total

property passing to such appointee is identical to his interest in default of appointment, the property passes in default of appointment; (b) if the total property passing to such appointee differs from his interest in default of appointment only in that it is a smaller fractional interest in the land or other thing covered by the power, the property passes in default of appointment."

If section 369, subdivision (b) applies, Mary must be deemed to have taken her portion in default of appointment, i.e., from decedent's grandparents rather than from decedent. The inheritance tax is "on the privilege of receiving [property] by testamentary devise or inheritance." (*Estate of Varian* (1968) 264 Cal.App.2d 248, 251 [70 Cal.Rptr. 335].) Mary received property, under the Restatement view by the testamentary disposition of her great-grandparents.

Appellant argues that since Restatement section 369, subdivision (a) was followed in California in *Estate of Dobbins* (1968) 258 Cal.App.2d 262 [65 Cal.Rptr. 704], this court should logically adopt section 369, subdivision (b) as the common law. The question presented in *Dobbins* was whether the decedent exercised the power of appointment within the meaning of Revenue and Taxation Code section 13693 as it read in 1962 (renumbered as § 13695 in 1965) since the appointees took only the share which each would have taken in default of appointment. The power had been created by the Pennsylvania will of decedent's father. The decedent was given a power to appoint among his children by will and in default of such will, the trust was to be distributed among decedent's children equally. Decedent died in 1962 and left a will providing that the whole of his estate including any property over which he might have a power of appointment should go equally to his four children. (The Pennsylvania court terminated the trust on decedent's death and distributed the appointive property to the four children without mention of decedent's will.) The court held that the exercise of a power of appointment which does nothing to change the estates vested in the persons who would have taken upon failure to exercise is not a transfer subject to inheritance tax. The court relied on *Estate of Murphy* (1920) 182 Cal. 740 [190 P. 46], *Matter of Lansing* (1905) 182 N.Y. 238 [74 N.E. 882], *Helvering* v. *Grinnell* (1935) 294 U.S. 153 [79 L.Ed. 825, 55 S.Ct. 354], and *Cook* v. *Dove* (1965) 32 Ill.2d 109 [203 N.E.2d 892], and noted that it had "found no case, and none has been called to our attention, which has held, under a statute which purported to tax only the exercise of a power of appointment, that the exercise in favor of the takers upon default of exercise is a taxable transfer." (*Estate of Dobbins, supra,* 258 Cal.App.2d at p. 269.) The court

concluded that the Legislature presumably was aware of the holding in *Murphy* and did not intend to tax the exercise of a power of appointment when the appointee was a taker in default.

Nothing in the *Dobbins* conclusion demands tax exemption for decedent's exercise in the case before us. Article seven of decedent's will clearly had its effect; it shifted property interests, and Mary Elaine Ware now enjoys one-third of what she would have enjoyed had decedent not acted. But, the decedent's spouse enjoys an income that she would not otherwise have. It seems contradictory to assert that the same clause that is clearly an "exercise" as to the surviving spouse is not an "exercise" as to Mary.

The *Estate of Murphy, supra,* 182 Cal. 740, relied on in *Dobbins,* arose in a complex factual situation. In essence, the decedent created a trust in 1912 under which he retained a life estate and a power to appoint the remainder by will if he died after February 1, 1915. In the absence of appointment, his widow and children would receive the trust assets. Decedent (who was both the donor and donee of the power) died after February 1, 1915; he provided by a general devise in his will that the 1912 trust agreement be carried out. The widow and children claimed that they took under the exercise of the power, not under the agreement, and thus no inheritance tax was due under the statute then applicable. (From 1913 to 1917, the exercise of a power of appointment was not taxable.) The court held that the taxable transfer occurred when the agreement creating the remainders was executed, and the tax assessed against the appointees under the 1912 statute was upheld. The court stated: "It is not necessary for us finally to determine whether this confirmatory clause [in the will] amounted to the exercise of the power of appointment. . . . If it is to be treated as the exercise of the power of appointment it is controlled by the views expressed in *Matter of Lansing,* cited below; and if it is to be treated as a failure to exercise the power of appointment then the vested defeasible remainders created December 17, 1912, became indefeasible by the decedent's failure to exercise the power of appointment." (182 Cal. at p. 745. In *Estate of Elsman* (1977) 74 Cal.App.3d 721, 733-734 [141 Cal.Rptr. 657], holding contra on other grounds, the court correctly described the instrument in *Murphy* as an *inter vivos* trust.) In *Murphy,* the power was taxed at its creation (the trust agreement) rather than at its exercise (decedent's will). Revenue and Taxation Code section 13695 taxes at their exercise powers that escaped taxation at their creation. (*Estate of Conroy, supra,* 67 Cal.App.3d 734, 743.) No California tax was

assessed on the creation of the powers in the case before us; they were created in Massachusetts.

Both *Dobbins* and *Murphy* relied on *Matter of Lansing, supra,* 182 N.Y. 238 [74 N.E. 882], where the mother had a life estate under her father's will with a remainder to her heirs-at-law, subject to the mother's limited power of appointment. At her death, the mother exercised the power of appointment in favor of her daughter, her only heir-at-law. The daughter claimed that she received the remainder under her grandfather's will and disclaimed receiving any interest under her mother's exercise of the power. The New York statute made the exercise or nonexercise of a power of appointment a transfer taxable to the beneficiary. The court held that there was no transfer since the taker in default had an interest that vested under the donor grandfather's will. (*Id.,* at p. 887.) Early New York cases followed *Lansing* where the appointed interest differed from the interest taken in default only by being smaller in amount: *Matter of Ripley* (1907) 122 App.Div. 419 [106 N.Y.S. 844], affd. (1908) 192 N.Y. 536 [84 N.E. 574]; *Matter of Slosson* (1915) 216 N.Y. 79 [110 N.E. 166]. These cases are also cited by appellant.

In 3 Powell on Real Property (1978) paragraph 392, page 378.3, footnote 24, the author discusses the New York cases and points out that "Massachusetts had borrowed its inheritance tax statute from New York, but rejected the above [*Lansing*] New York interpretation, holding that a donee exercised the final choice and hence that the appointive assets 'passed' under any such exercise in favor of a taker in default, Minot v. Stevens, 207 Mass. 588, 93 N.E. 973 (1911). Other states reached this same highly reasonable conclusion, Commonwealth v. Fidelity & Columbia Trust Co., 285 Ky. 1, 146 S.W.2d 3 (1940); State v. Brooks, 181 Minn. 262, 232 N.W. 331 (1930); Manning v. *Board of Tax Comm'rs., 46 R.I. 400, 127 A. 865 (1925);* In re Simond's Estate, 188 Wash. 211, 61 P.2d 1302 (1936)." (See also 2 Nossaman & Wyatt, Trust Administration and Taxation (1972) § 38.19 et seq., p. 38-98 et seq.) Thus, Professor Powell disagrees with the *Dobbins* opinion on the interpretation of the early cases from other jurisdictions.

In *Estate of Dobbins, supra,* 258 Cal.App.2d, footnote 5 at pages 267-268, the court distinguished the cases contra to *Lansing* as merely upholding the constitutionality of a tax imposed on the nonexercise of a power created prior to the enactment of the inheritance tax act. The New York statute which was the model for many other states imposed a tax on the exercise or nonexercise of a power of appointment created prior to the

act. *Dobbins* conceded that the Legislature had the *power* to tax such a transfer, but maintained that the Legislature did not *intend* to tax it.

The *Dobbins* limitation does not seem justified in view of the language in *Minot* v. *Stevens* (1911) 207 Mass. 588 [93 N.E. 973, 974-975]: "Those who would take in default of an appointment, have only an interest which is contingent upon the conduct of the donee of the power, who can make it vest in them absolutely in possession, or can defeat it altogether. He can make it vest in them absolutely in possession, or can defeat it altogether. He can make it vest in possession by an appointment to the persons named as the takers in default of appointment, in which case it will be theirs, subject only to a possible use for the payment of his debts, or he can do it by an omission to exercise the power, or he can dispose of it by an appointment to others, thus terminating the contingent interest and leaving the contingent remaindermen nothing. . . . We think it is in the power of the Legislature to say, in reference to succession in possession after the death of the persons whose decease is awaited, that property so held is not vested in anybody, and that when it vests in possession, through a proper disposition of it which is dependent upon the will and conduct of the donee, a succession tax shall be imposed." In *Minot* the nonexercise of the power was held to be a taxable transfer under a statute modeled on that of New York.

In two of the cases relied on in *Dobbins,* the takers in default renounced their appointed interests and elected to take under the disposition of the donor of the powers. In *Cook* v. *Dove, supra,* 32 Ill.2d 109 [203 N.E.2d 892], the court, in construing the Illinois Inheritance Tax Act, modeled after the New York act, followed the early New York decisions and held that the exercise of a power of appointment giving the takers in default the same interest that they had in the donor's estate was not a taxable transfer. The appointees had filed an election to take under the will of the donor rather than under the appointment. The court explained the importance of renunciation under the New York law: "Generally speaking, the New York courts have evolved a doctrine of election, the gist of which is that if the appointee takes by *the donee's exercise* of the power precisely what he would have taken in default of appointment, he may elect to take by default and not by *the donee's exercise* of the power, and the tax will be assessed accordingly. . . . The transfer of property by appointment requires not only an affirmative act by the donee of such power, but the acceptance of such bequest by the appointee as well. Without the latter, there is not a completed gift, but only an attempt." (Italics added.)

*Helvering* v. *Grinnell, supra,* 294 U.S. 153, was relied on in *Dobbins, supra,* although it is not cited by appellant. In *Grinnell,* the donor created by will a power of appointment in the donee, with a gift over to her next of kin. The donee left a will which in express terms appointed the property to her two sisters (her next of kin) in equal shares. The federal estate tax law in effect (§ 302(f) of the Revenue Act of 1926, 26 U.S.C. § 1094) provided for the taxation of all property "To the extent of any property passing under a general power of appointment exercised by the decedent. . . ." The two sisters elected to take under the will of the donor. The Supreme Court upheld the New York court's finding that no tax was due under the authority of *Lansing, supra,* and stated: "Clearly, the general power existed and was exercised; and this is not disputed. But it is equally clear that no property passed under the power or as a result of its exercise since that result was definitely rejected by the beneficiaries." (294 U.S. at p. 155 [79 L.Ed. at p. 827].) The *Dobbins* opinion[3] reflects awareness of the theory of election or "renunciation" in *Grinnell,* but concludes that the fact "does not appear to have been necessary to the result." (258 Cal.App.2d at p. 269, fn. 7.)

Mary Elaine Ware, the appointee in this case, has made no such election. Indeed, the renunciation of her interest under the decedent-donee's will would not have avoided taxes under former Revenue and Taxation Code section 13409 (in effect on Feb. 5, 1972, the date of the donee's death). (*Estate of Cooke* (1976) 57 Cal.App.3d 595, 599 [129 Cal.Rptr. 354]; *Estate of Varian, supra,* 264 Cal.App.2d 248; *In re Myers Estate, infra* (1964) 21 App.Div.2d 312 [250 N.Y.S.2d 224]; 5 Witkin, Summary of Cal. Law (8th ed. 1974) Taxation, § 218, p. 4185.)

Mary Elaine takes not in default of appointment, but because decedent chose to include her in his appointment. The facts are similar to those in *Estate of Rogers* v. *Commissioner* (1943) 320 U.S. 410 [88 L.Ed. 134, 64 S.Ct. 172], in which the decedent-donee had a general power of appointment under the donor's will, and the takers in default were decedent's widow and his two children. He appointed the property to his widow and daughter (in lesser shares than they would have received in default) and to his grandson. The appointive property was included in the gross estate of decedent under the statute[4] taxing " 'any property passing

---

[3] See also 2 Nossaman & Wyatt. Trust Administration and Taxation (rev. 2d ed. 1972) section 38.19, pages 38-98, 38-99, criticizing the theory of renunciation.

[4] Section 302(f) of the Revenue Act of 1926, chapter 27, 44 Statutes at Large 9, 71, as amended by section 803(b) of the Revenue Act of 1932, chapter 209, 47 Statutes at Large 169, 279, 26 United States Code section 811(f).

under a general power of appointment exercised by the decedent,' "[5] the same statute interpreted in *Grinnell, supra,* 294 U.S. 153. The Supreme Court, affirming the tax, stated: "A contrary view would mean that the decedent did nothing so far as he created interests for his widow and daughter, although undeniably the donee, by his will, exercised his power of appointment. Nothing of a taxable nature happened, it is urged, no property 'passed' through this exercise of his power. . . . To bring about the results which decedent sought to bring about, he had to deal with the whole of the corpus over which he had the power of disposition. . . . The son's appointees got what they got not because he chose to use one set of words rather than another set of words, but because he willed to give them the property that he willed. If the result of his testamentary disposition is to subject his beneficence to the estate tax, that is always the effect of an estate tax." (*Id.,* at pp. 412, 413, 414-415 [88 L.Ed. at pp. 136-138].) The court distinguished *Grinnell, supra,* on its facts: "Where a donee of a power merely echoes the limitations over upon default of appointment he may well be deemed not to have exercised his. power, and therefore not to have passed any property under such a power." (*Id.,* at p. 415 [88 L.Ed. at p. 138]; see also *Kerr's Estate* v. *Commissioner of Internal Revenue* (3d Cir. 1948) 174 F.2d 555.) The federal cases of *Rogers* and *Kerr* involved general powers of appointment. The New York Supreme Court reached the same result with a limited power in *In re Myers Estate* (1964) 21 App.Div.2d 312 [250 N.Y.S.2d 224].[6] The Supreme Court of Tennessee also reached that same result under the Tennessee inheritance tax statute on limited powers. (*American Nat. Bank & T. Co. of Chattanooga* v. *Benson* (1971) 225 Tenn. 600 [474 S.W.2d 427].)

Appellant argues that estate tax cases are not in point since we are interpreting an inheritance tax statute. In *Estate of Nunn* (1974) 10 Cal.3d 799, 805 [112 Cal.Rptr. 199, 518 P.2d 1151], the court observed: "The current and controlling portion of the Revenue and Taxation Code concerning powers of appointment [citations] was adopted in 1965. . . . The manifest purpose of the 1965 revision was to conform state inheritance tax treatment of powers with the federal estate tax treatment, and consequently, we accord great weight to applicable federal adminis-

---

[5] It is no longer required that property "pass" under the exercise of a power of appointment to be includible in the estate of the decedent under the federal law. (See 2 Nossaman & Wyatt, *supra,* § 38.19, pp. 38-102.)

[6] *Myers* was decided under the New York estate tax statute. For a summary of the legislative history of the New York statutes on taxation of limited powers of appointment, see *Whitney* v. *Tax Commission* (1940) 309 U.S. 530, 535-537 [84 L.Ed. 909, 911-913, 60 S.Ct. 635].

trative regulations and decisional law. . . ." (See also *Estate of Cohen* (1971) 4 Cal.3d 41, 49 [92 Cal.Rptr. 684, 480 P.2d 300]; *Estate of Dobbins, supra,* 258 Cal.App.2d at pp. 268-269.)

■ As mentioned before, the inheritance tax is on the privilege of receiving property from the decedent. The federal estate tax is on "the privilege of directing the course of property after a [person's] death." (*Estate of Rogers* v. *Commissioner, supra,* 320 U.S. at p. 413 [88 L.Ed. at p. 137].) The receipt of property from a decedent requires that he had directed its transfer and that it is distributed accordingly. There is no dispositive difference. Whether the tax falls on the giving or on the receiving is a matter for the Legislature to determine. (See *Estate of Elston* (1939) 32 Cal.App.2d 652, 660 [90 P.2d 608].) The difference affects only where the tax falls, not Mary Elaine Ware's possession and enjoyment of the appointive property.

The Powers of Appointment Act (Civ. Code, § 1380.1 et seq.) was enacted in 1969 and became operative on July 1, 1970. The act was based on recommendations and a proposed draft of Professor Richard R. B. Powell, set forth in 19 Hastings L.J. 1281 (1968). Although the act incorporates many prior decisions and many rules contained in the Restatement of Property, it does not include any portion of section 369.[7] (See Deering's Ann. Codes, coms., Civ. Code, § 1380.1 et seq.) The act does provide, however, that the appointive property *passes to the takers in default,* if any, when the donee of a discretionary power fails to appoint or ineffectively appoints. (Civ. Code, § 1389.3.) This certainly indicates that the Legislature is aware of the concept of "takers in default."

As previously mentioned, section 1380.1 states that the common law of powers of appointment is in effect in California *unless* modified ·by statute. We also note that the Restatement of Property section 333

---

[7]Professor Powell has commented on section 369 of the Restatement of Property: "In determining whether assets are truly 'unappointed' and consequently covered by the rules discussed in this paragraph [¶ 402], or effectively appointed, it becomes important to consider the soundness of the position taken in the *Restatement of the Law of Property* concerning the ineffectiveness of some appointments in favor of a taker in default. This section [369] represents an ill-conceived effort to extend into the law of powers generally, a then tentatively accepted set of rules which had been evolved with respect to taxation. The position no longer is accepted in the law of taxation, never was accepted elsewhere concerning powers of appointment, and flies in the face of a substantial body of decisions concerning the rights of the creditors of the donee of the power. It is one part of the *Restatement of the Law of Property* which can profitably be rejected in toto." (See 3 Powell on Real Property (1978) ¶ 402, p. 378.71.) In view of this condemnation of the section by one of the drafters of our general law of powers, the contention that the section is or should be part of our common law becomes less tenable.

relating to the taxation of powers provides: "Statutes imposing taxes upon the devolution of property upon death are construed as follows with reference to property covered by a power of appointment *unless the legislature manifests a contrary intent*: (a) the transfer of such property is from the donor, not from the donee, to the appointees or takers in default; . . ." (Italics added; see 3 Powell, The Law of Real Property (1978) ¶ 392, p. 374, fn. 3.)

Has the Legislature manifested an intent to tax the transfer from the donee to the appointees who are takers in default, under Revenue and Taxation Code section 13695? In the carefully considered *Dobbins* opinion, *supra*, the court concluded that the Legislature did not intend to tax such transfers when the appointee took the same property that he or she would have received in default of appointment. The Controller has asked only that we hold the transfer taxable when the appointee receives a lesser or different interest than she would have received in default of appointment. We therefore limit our holding to the latter proposition, although we are aware that our reasoning may conflict with that of *Dobbins*. The peaceful coexistence between *Grinnell* and *Rogers, supra,* may equally apply here.

In *Estate of Conroy, supra,* 67 Cal.App.3d 734, 745, our court traced the legislative history of the taxation of powers and concluded: "The interpretation of section 13695, in our view, rests upon the meaning of its language in accordance with applicable legal principles rather than upon legislative history."

Revenue and Taxation Code section 13695 is restricted in its application and is obviously designed to tax transfers that had previously escaped taxation. As previously noted, section 13695 provides: "Where a limited power of appointment . . . [created] before 5 p.m. of June 25, 1935, by a donor who died prior to that date, is exercised after that date by the donee, the exercise of the power is a transfer subject to this part from the donee to the person appointed at the time of the exercise, *as though the property to which the power relates belonged absolutely to the donee and is transferred by him by will.*" (Italics added.) The meaning of the phrase "as though the property to which the power relates belonged absolutely to the donee" is clear and was so found in *Estate of Newton* (1950) 35 Cal.2d 830, 836 [221 P.2d 952, 19 A.L.R.2d 1399]. Justice Traynor in his concurring opinion further elucidated: "The imposition of

an inheritance or estate tax does not depend on the decedent's ownership of the property under common law principles. The tax is not imposed on the property, but on the decedent's transfer of that property. When, as in the present case, the statute expressly makes the transfer of property taxable 'in the same manner as though the property . . . belonged absolutely' to the decedent, it is irrelevant that under common law concepts of property ownership the property did not belong absolutely to the decedent." (*Id.,* at p. 838.) In *Newton,* the appointee widow objected to the tax on the grounds that California had no jurisdiction to impose a tax on intangibles held in New York on the basis of the donee's residence. The court held that the exercise by a resident donee of a limited power of appointment over out-of-state personal property was taxable where the donor died before the effective date of the Inheritance Tax Act of 1935 and the power was exercised thereafter. (See also *Estate of Cohen, supra,* 4 Cal.3d 41, 53; *Estate of Elsman, supra,* 74 Cal.App.3d 721, 728; *Estate of Baird* (1953) 120 Cal.App.2d 219, 228 [260 P.2d 1052]; cf. *Estate of Goulart* (1966) 242 Cal.App.2d 811, 813 [51 Cal.Rptr. 808], concerning exemptions for adoptive relatives where the court stated: "[O]ur codes show no legislative intent to effect 'total correlation between probate law and taxation law.' ")

 Appellant's theory that no transfer took place because title to the appointive property was vested in the appointee subject to divestment cannot be sustained under the reasoning of the later cases that property law concepts are not binding. We are persuaded and hold that the Legislature did not intend to exempt from taxation under section 13695 an exercise of a limited power of appointment which gives to the appointee a lesser or a different share than the appointee would have taken in default of appointment.

In the case before us, the decedent-donee carefully worked out an estate plan providing for his spouse, his children, and his grandchildren. He considered the appointive property, and by article seven of his will he exercised the power of appointment. His exercise of the power was in the manner prescribed by Civil Code section 1386.1, subdivision (b)(1): "The donee declares, in substance, that he exercises the specific power or all powers that he has." (See also Civ. Code, §§ 1387.1 and 1387.2 concerning the types of appointment.) Mary Elaine Ware takes not in default of appointment, but because the decedent chose to include her in his appointment. He could have given all the property to his spouse or to

the children of Mary Elaine Ware. He chose to give her one-third of the appointive property, and the transfer is subject to taxation under Revenue and Taxation Code section 13695.

The order fixing tax is affirmed.

Racanelli, P. J., and Elkington, J., concurred.