[Civ. No. 35905. Second Dist., Div. Three. July 6, 1970.]

Estate of BARNEY MORSE, Deceased.
HOUSTON I. FLOURNOY, as State Controller,
Petitioner and Appellant, v.
AUGUSTA MORSE, as Executrix, etc., Objector and Appellant.

## Counsel

Myron Siedorf, Walter H. Miller and Edwin Rosenthal for Petitioner and Appellant.

Arthur V. Kaufman for Objector and Appellant.

## Opinion

**COBEY, Acting P. J.**—These are cross-appeals by the State Controller and by a taxpayer, Augusta Morse, from a judgment redetermining the amount of tax due under the Inheritance Tax Law from the various beneficiaries of the will of Barney Morse, who died on March 31, 1968.

These appeals involve questions of interpretations of Revenue and Taxation Code, sections 13692 and 13694[1] as applied to an implied gift of a power of appointment to a surviving spouse over much of the deceased spouse's one-half of their community property. To our knowledge this case is the first to interpret these sections since they were rewritten in 1965.

The difference in the total inheritance tax due under the will between that proposed by the inheritance tax appraiser and that redetermined by the trial court is $57,446.75. This difference arises largely from the circumstances that the appraiser assessed that portion of the tax attributable to the transfer of the residue of Barney's estate entirely to Augusta, while the court assessed this portion entirely to the remaindermen.

The sole question presented by these appeals is the taxability of the interest Augusta received under Barney's will in his one-half of their community property. The Controller's position is that Augusta, by reason of her unlimited right to consume the property bequeathed to her, received

---

[1]All statutory references herein are to the Revenue and Taxation Code unless otherwise indicated.

under the will *solely* a general power of appointment over such property and therefore the transfer should be taxed to her alone without any deduction other than the specific exemption. Augusta's position is that under the will she either received this property in fee or a life estate in it with a power to consume it and that in either event no inheritance tax is due from her on this transfer.

The trial court found that Augusta, as the surviving spouse, received a life estate in such property with the right to consume it during her lifetime. To resolve this controversy we must first determine exactly what Augusta received under the will.

## NATURE OF AUGUSTA'S INTEREST UNDER THE WILL

Barney's last will was a joint and mutual will of Barney and Augusta. (See *Daniels* v. *Bridges,* 123 Cal.App.2d 585, 588-589 [267 P.2d 343].) This will directed, after making two comparatively small specific bequests, that the entire residue of the estate of the first to die should go to the survivor. Upon the death of the survivor one-half of the estate *remaining, if any,* should go to their only issue, a son, if living, and the other one-half should be divided into four separate trusts for the benefit of his four children. The final paragraph of the will read as follows: "EIGHTH: This Will is irrevocable and not subject to modification except with the written consent of both of us during the lifetime of both of us. After the death of either of us this Will shall continue in full force and effect and as long as our son or any issue of our son shall be living shall not be subject to modification, alteration or revocation by the survivor."

In December 1968, at the conclusion of the appropriate statutory proceedings (see Prob. Code, § 1080 et seq.), the probate court determined by decree that Barney's entire estate consisted of the community property of himself and Augusta and that aside from the two minor specific bequests, which we have already mentioned, all of his estate was bequeathed to Augusta. But this decree, which as a final decree would otherwise be binding upon us in these proceedings (see Prob. Code, § 1082; *Estate of Radovich,* 48 Cal.2d 116, 121-124 [308 P.2d 14]; *Estate of Clarke,* 66 Cal.2d 142, 145-146 [56 Cal.Rptr. 897, 424 P.2d 337]), is silent upon the issue before us, namely, the nature of the interest which Augusta received under the will.

■ We think that both parties are wrong regarding the nature of this interest. The Controller is correct, however, in his contention that, since Augusta was bequeathed the right to consume during her lifetime all or any portion of the residue of Barney's estate, she obtained under the will,

for inheritance tax purposes, a general power of appointment over this community property.

 The Inheritance Tax Law makes taxable, at the date of the donor's death, the gift of certain powers of appointment. (See § 13694.) The gift to a donee of property of an unlimited power to consume it during her lifetime is inferentially a gift of a general power of appointment over this property. (See § 13692, subd. (a).)[2]

This conclusion is supported by the legislative history of the changes made in the taxation of powers of appointment under the Inheritance Tax Law by the Legislature in 1965. At that time the State Bar of California sponsored a bill making, among other things, various changes in the Law. (40 State Bar J. 135.) During the bill's passage through the Legislature it was amended to include a complete revision of the article in the law dealing with powers of appointment. (See Assem. Bill 2450 (1965 Reg. Sess., April 14, 1965) as amended by State Senate June 9, 1965.) According to the sponsor of the bill the purpose of this revision was to conform the law to "the federal estate tax treatment of such powers" and to add in essence to the law, among other things, section 2041 of the Federal Internal Revenue Code. (40 State Bar J. 600, 607.) A comparison of the language of section 13692, as then rewritten, with that of section 2041(b)(1) of title 26 of the United States Code readily establishes that the language of our statute is substantially identical with that of the federal statute.

Under these circumstances we believe that we should follow the applicable federal administrative regulation,[3] and federal decisional law in interpreting section 13692, our counterpart to their section 2041(b)(1). See *Holmes* v. *McColgan,* 17 Cal.2d 426, 430 [110 P.2d 428]; *Douglas* v. *California,* 48 Cal.App.2d 835, 838 [120 P.2d 927]; *Meanley* v. *McColgan,* 49 Cal.App.2d 313, 317 [121 P.2d 772].) The federal courts have held in circumstances very much like those of this case that the bequest to a

---

[2]We reach this conclusion notwithstanding the fact that section 13692 defines a general power of appointment as one exercisable in favor of the decedent, among others, and section 13305 defines decedent as including, among others, a donor rather than a donee. But section 13302 provides that this definition of decedent does not govern "where the context otherwise requires," and a reading of the remaining two subdivisions of section 13692 demonstrates that in their context the word decedent can refer only to the donee of a power of appointment. We do not believe that the Legislature would have used the word decedent within the same section in two different senses without plainly indicating that it was doing so.

[3]Treasury Regulation section 20.2041-1(b)(1) reads as follows: "The term 'power of appointment' includes all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of local property law connotations. For example, if a trust instrument provides that *the beneficiary may appropriate or consume the principal* of the trust, *the power to consume or appropriate is a power* of appointment . . . ." (Italics added.)

surviving spouse under a joint and mutual will of an unlimited power to consume the life estate also bequeathed to her amounts to the gift to her of a general power of appointment and the property subject to the power is includible within the estate for federal estate tax purposes. (See *Phinney v. Kay* (5th Cir. 1960) 275 F.2d 776, 777, 780-781; *Potter* v. *United States,* 269 F.Supp. 545, 550.) From the cases cited in the Controller's brief and from our own research, it appears that there is no significant dissent in the federal cases from this conclusion. Accordingly we hold that Augusta received under the will a general power of appointment over the residue of Barney's estate.

The Controller is, however, incorrect in his further claim that this power of appointment was all that Augusta received under the will. We believe that she also received an estate which was more than an ordinary life estate but less than a fee interest. She received more than a life estate in two respects. First, under the last paragraph of the will, which we have quoted in full earlier, if her son and his issue do predecease her, she is privileged to convert her interest into a fee interest. Secondly, and of significance in the tax controversy before us, her unlimited right to consume all of this property is not an attribute a life tenant usually possesses. (See 2 Witkin, Summary of Cal. Law (7th ed. 1960) § 100, p. 954.)

The Controller is further in error in asserting that Augusta did not receive under the will a life estate. What she received was an unusual and particularly favored form of life estate. In one paragraph of the will she was bequeathed the residue of Barney's estate. In the immediately succeeding paragraph the will directed, as we have previously indicated, that upon her death the property *remaining, if any,* from this bequest should go to her son and his four children. This disposition of this property upon her death is binding upon her because of her written agreement not to change the will contained in the last paragraph thereof which we have quoted earlier. (See *Brown* v. *Superior Court,* 34 Cal.2d 559, 563-564, 565 [212 P.2d 878].)

She therefore received under the will a life estate. The failure of the will to include the usual words expressly limiting her estate to one for life does not invalidate this conclusion. (See *Estate of Rath,* 10 Cal.2d 399, 404 [75 P.2d 509, 115 A.L.R. 836]; *Hardy* v. *Mayhew,* 158 Cal. 95, 103 [110 P. 113]; *Burnett* v. *Piercy,* 149 Cal. 178, 192 [86 P. 603]; *Estate of Smith,* 196 Cal.App.2d 544, 549 [16 Cal.Rptr. 681], hg. den.; *Steeve* v. *Yaeger,* 145 Cal.App.2d 455, 462 [302 P.2d 704], hg. den.; *Hill* v. *Thomas,* 135 Cal.App.2d 672, 677 [288 P.2d 157].) The grant to her of the unlimited right to consume the property likewise does not invalidate this conclusion. (*Estate of Rath, supra,* at p. 404; *Estate of Smythe,* 132

Cal.App.2d 343, 346 [282 P.2d 141]; *Estate of Nichols,* 199 Cal.App.2d 783, 794-796 [19 Cal.Rptr. 93], hg. den.)

It should be equally apparent from what we have said thus far that Augusta received less than a fee interest in the property. This conclusion follows from her inability to dispose of it otherwise than by consumption during her life and her presently complete inability to dispose of it at all upon her death. (See Civ. Code, § 762.) ■ "It is well settled that a bequest or devise to a surviving spouse in general terms, without stating whether it is a fee or life estate, with broad powers of enjoyment or disposition, but with a gift over to subsequent takers of what remains on the death of the survivor, should be construed to create a life estate and not a fee in the survivor. . . ." (*In re Lewis,* 271 Cal.App.2d 371, 377 [76 Cal.Rptr. 289], hg. den.)

We conclude that both parties are in error as to the nature of the interest which Augusta received under the will and, since the inheritance tax before us was computed and recomputed on the basis of these mistakes, it will be necessary for us to send the case back to the trial court for recomputation of the inheritance tax at issue.

■ THE TAXABILITY OF THE TRANSFER TO AUGUSTA

Section 13551, since 1965, has read in relevant part as follows: "Upon the death of a spouse:

"(a) None of the community property transferred to a spouse is subject to this part, except as provided in section 13694."

"[T]his part" is the Inheritance Tax Law.

Revenue and Taxation Code section 13694, since 1965, has read in relevant part as follows: ". . . [A] gift of a . . . power of appointment made in conjunction with a disposition of property otherwise subject to this part . . . is a transfer subject to this part from the donor to the donee at the date of the donor's death, except that if a power of appointment over any portion or all of the donor's half interest in community property is given to the donor's spouse, the value of any interest, other than the power itself, given the donee in such property subject to such power, up to but not exceeding the value of a life estate therein of the donee, *is not subject to this part.*" Again, "this part" means the Inheritance Tax Law.

This section has been uniformly interpreted to mean that a gift of a power of appointment over a deceased husband's community interest in the community property of the spouses, when coupled with a gift to the widow of an additional interest in such property, is taxable under the Inheritance Tax

Law only to the extent that such interest exceeds a life estate in the property. (See H. Flournoy, State Controller, Division of Inheritance and Gift Tax, Statistics of California State Inheritance Tax (1965-1966), p. 21; Legislation Committee, Report (1965) 40 State Bar J. 600; Witkin, Summary of Cal. Law (1969 Supp.) pp. 1184-1185; Marshall, Cal. Practice, State and Local Taxation, § 474, p. 404; *Estate of Legatos,* 1 Cal.App.3d 657, 663 [81 Cal.Rptr. 910] (dictum).)

We hold that the proper application of section 13694 in this case requires that the clear market value of Augusta's life estate in the residue of her deceased husband's estate be excluded from the taxable portion of the estate and that the transfer of the residue be taxed solely to her to the exclusion of the remaindermen because of her unlimited power to consume the residue during her lifetime.

The judgment is reversed for redetermination of the inheritance tax in accordance with the views expressed in this opinion. Costs on appeal are assessed solely against Augusta Morse, executrix.

Schweitzer, J., and Allport, J., concurred.