60 Cal.App.3d 169 (1976)
129 Cal. Rptr. 820
Estate of ANNA E. ALLGEYER, Deceased.
KENNETH CORY, as State Controller, Petitioner and Respondent,
v.
HELEN A. CLARK, as Executrix, etc., Objector and Appellant.
Docket No. 15668.
Court of Appeals of California, Fourth District, Division Two.
July 15, 1976.
*170 COUNSEL
Kaufman & Morgan and J. Norman Morgan for Objector and Appellant.
Myron Siedorf, Margaret Groscup and Mary Cardiff for Petitioner and Respondent.
OPINION
FOGG, J.[*]
This is an appeal by the executrix from an order fixing the inheritance tax in the matter of the estate of Anna E. Allgeyer, deceased. *171 The primary issue in this case is whether the decedent's power to invade the corpus of a trust for her "reasonable support, care and comfort" is a general power of appointment subject to inheritance tax under section 13692 of the Revenue and Taxation Code.[1]

Statement of Facts
On January 26, 1953, Herman E. Allgeyer executed a will which included a testamentary trust for the benefit of his wife, Anna E. Allgeyer. He died on December 17, 1963, and his will was admitted to probate. It provided in pertinent part, that: "I give, devise and bequeath the residue of my estate, IN TRUST, to my wife, ANNA E. ALLGEYER, to serve without bond, but in the event she predeceases me or fails to act or ceases to act, then to BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, a national banking association, IN TRUST HOWEVER, both as to my said wife, ANNA E. ALLGEYER, and said BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, to be held, administered and distributed in accordance with the following provisions:
"(A) The entire net income from the Trust Estate shall be paid to or applied for the benefit of my wife, ANNA E. ALLGEYER, in monthly, quarterly or other convenient installments during her lifetime.
"(B) If aforesaid payments of net income from this trust to my said wife, ANNA E. ALLGEYER, shall be insufficient in the discretion of the Trustee to provide for her reasonable support, care and comfort, the Trustee may pay to her or apply for her benefit so much of the principal of the Trust Estate as it may deem proper or necessary for that purpose." (Italics added.)
Anna Allgeyer acted as the testamentary trustee until April 4, 1969. Thereafter, the Bank of America National Trust and Savings Association was appointed successor trustee and acted in such capacity until Anna's death on April 30, 1974.
The inheritance tax referee prepared and filed his report and included the trust assets for tax purposes. Appellant filed objections and after a hearing, the trial court concluded that the testamentary trust conferred a general power of appointment and that the trust assets were properly subject to California inheritance tax. This appeal ensued.

*172 Discussion and Disposition

(1a) Section 13692 provides in part: "`General power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate, provided that the following shall not be deemed to be general powers of appointment: [¶] (a) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support or maintenance of the decedent." Appellant contends the power of appointment was limited by an ascertainable standard and thus, the trust assets were not subject to taxation. Simply stated, the question for decision is whether the "reasonable support, care and comfort" standard for invasion of corpus is a sufficiently definite standard under subdivision (a) of section 13692.
"The broad definition of a general power of appointment adopted by the California Legislature in 1965 conforms to the definition which has been applied for many years by federal estate tax authorities. (See 26 U.S.C.A. § 2041, subd. (b)(1).) (2) Indeed, one of the purposes of the California legislative amendments to the Inheritance Tax Law in 1965 was to conform the taxation of powers of appointment under California Inheritance Tax Law to the practice under the federal estate tax laws. (40 State Bar J. (1965) at pp. 600, 606-607.) Two commentators advised the State Bar: `After September 17, 1965 [the effective date of the amendments to the Revenue and Taxation Code, including sections 13551, 13554, 13692, and 13694], the tax aspects of the possession of a general power of appointment will be the same for Federal and for California purposes.... The California taxing authorities will now be able to rely on Federal interpretations for taxation of powers of appointment.' (Martin and Miller (1965) supra, 40 State Bar J. 706, 709; see also Marshall, California State and Local Taxation (1969) supra, § 477, at p. 423; Hewitt and Ward, California and Federal Estate and Tax Planning (1968) supra, ch. VII, §§ 91, 95, at pp. 158, 165; Powell, Powers of Appointment in California (1968) 19 Hastings L.J. 1281, 1291.)" (Estate of Cohen, 4 Cal.3d 41, 49 [92 Cal. Rptr. 684, 480 P.2d 300]; see also Estate of Nunn, 10 Cal.3d 799, 805-806 [112 Cal. Rptr. 199, 518 P.2d 1151].)
In examining federal regulations and decisional law in conjunction with California decisions since the enactment of the statute, it becomes clear that Anna had a general power of appointment.
"The implementing federal administrative regulations provide some guidance in determining whether a given standard is properly ascertainable. *173 `A power is limited by such a standard if the extent of the holder's duty to exercise and not to exercise the power is reasonably measurable in terms of his needs for health, education, or support (or any combination of them). As used in this subparagraph, the words "support" and "maintenance" are synonymous and their meaning is not limited to the bare necessities of life. A power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard. Examples of powers which are limited by the requisite standard are powers exercisable for the holder's "support," "support in reasonable comfort," "maintenance in health and reasonable comfort," "support in his accustomed manner of living," "education, including college and professional education," "health," and "medical, dental, hospital and nursing expenses and expenses of invalidism." In determining whether a power is limited by an ascertainable standard, it is immaterial whether the beneficiary is required to exhaust his other imcome before the power can be exercised.' (26 C.F.R. § 20-2041-1, subd. (c)(2).) These provisions are lenient to a fault, equating, for example, `support,' whose `meaning is not limited to the bare necessities of life,' with `an ascertainable standard relating to... support' and `health' with `an ascertainable standard relating to ... health.'" (Estate of Nunn, supra, 10 Cal.3d 799, 806.)
In Nunn, the court decided that the decedent's power to invade the corpus of a trust "for her own use and need as she may determine" was a general power of appointment. In Estate of Morse, 9 Cal. App.3d 411 [88 Cal. Rptr. 52], the decedent and his spouse made joint and mutual wills, leaving the residue to the survivor. Upon the death of the survivor, one-half of the estate remaining, if any, was to pass to their son and the other one-half was to be divided into four separate trusts for the benefit of his four children. The court ruled that the surviving spouse had a general power of appointment over the residue of the estate inasmuch as she had an unlimited right to consume the property. Ergo, the residue was subject to taxation. Estate of Cohen, supra, 4 Cal.3d 41, while readily distinguishable upon its facts, is also indicative of the strict construction applicable to powers of appointment. The decedent and spouse entered into a trust providing that the net income be distributed to the trustors and then to the survivor of them and that the trustors or the survivor of them had the power to revoke the trust in whole or in part. The court held that the surviving spouse received a life estate and a general power of appointment by way of the power to revoke over the remainder for inheritance tax purposes.
*174 The federal cases almost uniformly use a narrow interpretation as to the limitation by an ascertainable standard relating to health, education, support or maintenance when construing the relevant federal regulation. In First Virginia Bank v. United States (4th Cir.1974) 490 F.2d 532, the court found a general power of appointment when an invasion of corpus was permitted for "comfort and care." Decedent's husband had left stock to her with the "right to dispose, sell, trade or use [the stock] during her lifetime for her comfort and care as she may see fit." The court found that the decedent had a general power of appointment, stating: "This narrow interpretation of the exemption from taxation found in § 2041 (b)(1)(A) has been generally followed when the appointee could exercise the power to provide for his comfort." (Id., at p. 536; see also Lehman v. United States (5th Cir.1971) 448 F.2d 1318; Miller v. United States (3d Cir.1968) 387 F.2d 866; Strite v. McGinnes (3d Cir.1964) 330 F.2d 234; Stafford v. United States (E.D.Wis. 1964) 236 F. Supp. 132; but see Tucker v. U.S. (1974) 74-2 USTC.)
(1b) The power granted Anna in this case was not limited in such a way as to reduce it from virtual ownership of the assets. "Were we confronted with a dispute between the widow and the remaindermen over the propriety of an invasion, we would not adopt a grudging and narrow interpretation of ... [comfort]. The interpretation we would adopt in that situation is the one to which we must now look to determine whether `an ascertainable standard relating to ... health, education, support or maintenance' is established. [Citation.]" (Estate of Nunn, supra, 10 Cal.3d 799, 807.) It is not.
The order is affirmed.
Tamura, Acting P.J., and Kaufman, J., concurred.
NOTES
[*] Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.
[1] All statutory references are to the Revenue and Taxation Code unless otherwise indicated.