[Civ. No. 56271. Second Dist., Div. One. May 23, 1980.]

KENNETH CORY, as State Controller, Plaintiff and Respondent, v. NANCY WAITE WARD et al., Defendants and Appellants.

COUNSEL

Taubman, Simpson, Young & Eckert, Taubman, Simpson, Young & Sulentor and William J. Sulentor for Defendants and Appellants.

Myron Siedorf, Margaret Groscup and James R. Birnberg for Plaintiff and Respondent.

OPINION

**HANSON (Thaxton), J.**—This is an appeal by the surviving daughter and the children of a predeceased daughter of Thurlyne Buffum Waite,

deceased, from an order of the court fixing inheritance tax (Code Civ. Proc., § 904.1, subd. k).

## FACTS

Thurlyne Buffum Waite was at the time of her death on September 2, 1975, the beneficiary under a testamentary trust created by her mother, Fern Smith Buffum. The several trusts created by Fern Smith Buffum were established by the decree of preliminary distribution in the probate of her estate which was entered May 8, 1958, by the Los Angeles Superior Court.

Pursuant to that decree three trusts were established: Trust No. 1 for the benefit of the issue of the testatrix' son, Harry Austin Buffum; trust No. 2 for the benefit of her daughter Thurlyne Buffum Waite; and trust No. 3 for the benefit of another daughter Dorothy Buffum Chandler. The order herein appealed fixed the inheritance tax which the State of California seeks to impose on the balance of the principal remaining in trust No. 2 at the time of the death of the primary beneficiary, Thurlyne Buffum Waite.

Trust No. 2 provided that the principal beneficiary, Thurlyne Buffum Waite, should be trustee of her own trust, while her sister Dorothy Buffum Chandler was appointed alternate and successor trustee. The Bank of America National Trust and Savings Association (hereinafter referred to as the Bank) was appointed a second alternate and successor trustee in the event both Thurlyne Buffum Waite and Dorothy Buffum Chandler should fail or cease to serve.

Pursuant to the terms of trust No. 2 the net income was to be distributed to the decedent's daughter, Thurlyne Buffum Waite, during her lifetime and at her death the income was made payable to Thurlyne's daughters, Dorothy Waite Still and Nancy Waite Ward, in amounts subject to the trustee's discretion and not necessarily equally. The stated purpose was to provide for the "support, maintenance, education and/or comfort of said grandchildren and their respective dependents; giving due consideration to their other income and resources..."[1] It

---

[1]The text of article V providing for income distribution and trust termination is as follows:

"(b) The Trustee shall distribute the net income at convenient intervals, not less frequently than quarterly, to the decedent's daughter, Thurlyne Buffum Waite, for and during the remainder of her lifetime.

was provided further that the trust should terminate at Thurlyne's death, if her younger daughter was then 35, and the entire remaining corpus should then be distributed in equal shares to her children or their descendents.

Article VI of the decree establishing the trusts authorized the trustee in its sole discretion to determine and make distributions from corpus to any beneficiary entitled to participate in trust income. The trustee was entitled to invade trust corpus "up to and including the whole thereof" to supply the needs of any beneficiary or his or her dependents for "support, maintenance, education and/or comfort."[2] A spendthrift provision was included in article VII to protect the corpus from creditors of the beneficiaries.[3]

At the time of the death of the original trustor, Fern Smith Buffum, in 1958 an inheritance tax appraiser filed a report appraising the value of the interest in trust No. 2 passing to Thurlyne Buffum Waite as a life estate and the inheritance tax was computed on that basis. The in-

---

"(c) Upon the death of said Thurlyne Buffum Waite the Trustee shall distribute to or for the use and benefit of decedent's grandchildren, Dorothy Waite Still and Nancy Waite Ward, so much of the income available for distribution from said trust as in the sole discretion of the Trustee shall be deemed necessary or proper for the support, maintenance, education and/or comfort of said grandchildren and their respective dependents; giving due consideration to their other income and resources and without being required to make equal distributions to or for the benefit of each of them or their respective dependents. Any income not so distributed shall be accumulated and added to the principal of said trust.

"(d) The trust shall continue in effect until the happening of that one of the following described events which shall last occur, to wit: (1) the death of said Thurlyne Buffum Waite and (2) the thirty-fifth anniversary of the birth of the younger of her two children above named. Thereupon the trust shall cease and terminate and the entire balance of the trust estate, including any undistributed income therefrom, shall be distributed in equal shares to the aforesaid two children of said Thurlyne Buffum Waite."

[2] Article VI reads: "If at any time or times during the life of any of the foregoing trusts any beneficiary then entitled to participate in the income of such trust shall be in want of additional moneys for the support, maintenance, education and/or comfort of such beneficiary or any of his or her dependents, then in each such case the Trustee may distribute to such beneficiary, or apply to the use and benefit of such beneficiary or dependent, such amount of the principal of such trust estate, up to and including the whole thereof, as in the sole discretion of the Trustee may be deemed necessary or proper to meet said want; giving due consideration to the other income and resources of such beneficiary and to the relative need, actual or potential, of the other beneficiaries of such trust."

[3] Article VII provided: "The interests of beneficiaries in principal or income of any trust created under decedent's Last Will shall not be subject to claims of their creditors or others, nor to legal process, and may not be voluntarily or involuntarily alienated or encumbered."

terests in trust No. 2 which went equally to Nancy Waite Ward and Dorothy Waite Still, or their issue, were appraised and taxed as remainders. The court on February 25, 1958, made and entered its order fixing tax in accordance with the inheritance tax appraiser's report and that order became final without appeal.

Thurlyne Buffum Waite became trustee at the time trust No. 2 was established and continued to serve in that capacity even after she suffered a severe stroke in the spring of 1970. In February of 1974, the Buffums stock which constituted the principal asset of the trust having been sold, the trust corpus came to be represented by a United States treasury bill with a face value of $519,927.08. On May 24, 1975, the superior court accepted the resignation of Thurlyne Waite as trustee. Dorothy Buffum Chandler having declined to act as successor trustee, the Bank was qualified to assume that function and it continued to act in this capacity until the death of Thurlyne Waite.

The final condition for termination of trust No. 2 was activated by the death of Thurlyne Waite and pursuant to the terms of the trust instrument the corpus was distributed to her descendents. Because there was no probate estate, her surviving daughter, Nancy Waite Ward, instituted the present action against the Controller of the State of California to determine the inheritance tax consequences attendant upon the distribution of the corpus of trust No. 2. The inheritance tax referee filed a report imposing a tax of $67,960 based on the value of the entire corpus on the ground that the decedent had possessed a life estate coupled with a general power of appointment which rendered the transfer of the full amount taxable at her death. Nancy Waite Ward and the children of Dorothy Waite Still, predeceased daughter of the decedent, filed objections to that report on the basis that they held remainder interests upon which inheritance taxes were collected at the time of the probate of Fern Smith Buffum's estate.

The trial court after hearing found that the decedent had continued to receive all of the net income from trust No. 2 until her death, but that no principal was received by her. The trial court concluded that under the testamentary trust Thurlyne Waite had a power to invade the principal of trust No. 2, up to and including the whole thereof, for her own benefit; that this power was not limited by an ascertainable standard relating to the health, education, support or maintenance of the decedent because it could be exercised by Thurlyne Waite for her own "comfort" in her own behalf; that this was true despite the fact that she

possessed that power as a trustee; and that this conclusion was not affected by the fact that the decedent was required in invading corpus to give consideration to her other income and resources and to the relative needs of the other beneficiaries of the trust. The court held that this power constituted a general power of appointment and that when decedent resigned as trustee of trust No. 2 the release during her lifetime of that power was of such a nature that if it were a transfer of property owned by the decedent, such transfer would be subject to inheritance tax.

The court further observed that if decedent had owned the principal of trust No. 2 and transferred it during her lifetime but continued to receive all income therefrom until her death, such a transfer would be subject to inheritance tax and, therefore, the resignation of Thurlyne Waite as trustee constituted a release of a general power of appointment which was a transfer subject to inheritance tax. Finally, the court determined that the taxation of the estate at the time of the death of Fern Smith Buffum did not constitute either res judicata or collateral estoppel to a different taxation of the release of the power created by the same trust in Thurlyne Buffum Waite and it overruled objections to the report of the inheritance tax referee. The court accordingly determined the respective tax liabilities of the surviving daughter and grandchildren of the decedent Thurlyne Waite pursuant to the report of the inheritance tax referee and the objectors, Nancy Waite Ward and the children of Dorothy Waite Still, have appealed that order.

ISSUES

Appellants contend (1) that the decedent Thurlyne Waite held a limited or special, rather than a general, power of appointment; (2) even if she held a general power of appointment her resignation due to ill health did not constitute a taxable release within the meaning of Revenue and Taxation Code section 13697[4] or otherwise; and (3) that the determination at the time trust No. 2 was established by the 1958 decree that Thurlyne Waite had only a life estate therein while her daughters Dorothy Waite Still and Nancy Waite Ward or their issue received vested remainders was res judicata and any redefinition and taxation of those interests now would violate the due process clauses of the United States and California Constitutions.

---

[4]Unless otherwise indicated, all statutory references are to the Revenue and Taxation Code.

DISCUSSION

I

A general power of appointment for inheritance tax purposes is defined in California as "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate...." (§ 13692.) A limited power of appointment is "a power...which does not qualify as a general power of appointment." (§ 13693.)

Powers of appointment have been taxed by various methods in California over the years.[5] From 1935 to the present under the code a tax is imposed on the value of the property transferred by the donor to the donee of the power. (§ 13694.) With the exception of a pre-1935 power, the state may not tax again the donee's exercise of a *limited* power of appointment.

"However, the power given to the donee may be so broad that he is virtually the outright owner of the property. Where, for example, D wills property to T in trust to pay the income to L for life with power in L to appoint the property either during his lifetime or by his last will to any person in the world including himself, L has all the rights of a complete owner. He receives the income and can do what he wishes with the corpus, even to the extent of appointing it immediately to himself. In such a case, the Inheritance Tax Department taxes the transfer as one from the donor, D, to the donee, L,[6] and also taxes again when L exercises the power as a transfer from him to his appointees, or as a transfer from him to the taker in default if he should fail to exercise the power. The purpose of the 1965 legislation[7] was to tax this second transfer. The prior law[8] taxing the gift of the power from the donor to the donee is retained, and in cases where the power is so broad that the donee's

---

[5]Marshall, California Practice, State and Local Taxation (1969) Inheritance Tax, section 477, subdivision B, at page 421, states: "Thus the history of taxation of powers of appointment in California has been:

"1905-1913 Taxed as the donee's transfer to the appointees or takers in default.
"1913-1917 Taxed as the donor's transfer to the donee of the power.
"1917-1935 Taxed as the donee's transfer to the appointees or takers in default.
"1935-Present Taxed as the donor's transfer to the donee of the power."

[6]In a footnote at this point Judge Marshall states: "This is in effect an outright transfer from D to L."

[7]In a footnote at this point Judge Marshall states: "§ 13696."

[8]In a footnote at this point Judge Marshall states: "§ 13694."

status approaches that of economic owner of the property, another tax is assessed upon the termination of the donee's 'ownership' by exercise or other termination of the power." (Marshall, Cal. Practice, State and Local Taxation, *supra*, § 477, subd. D, pp. 422-423.)

It therefore appears that where a life estate is combined with an unlimited right to invade the corpus, the result taken in the context of the entire instrument, may be to create a general power of appointment. (See, e.g., *Estate of Rosecrans* (1971) 4 Cal.3d 34 [92 Cal.Rptr. 680, 480 P.2d 296]; *Estate of Morse* (1970) 9 Cal.App.3d 411 [88 Cal.Rptr. 52].) The California Supreme Court has held that a surviving husband who took a life estate in decedent wife's share of community property under a trust which gave him power to revoke or amend without limitation obtained a life estate and a general power of appointment. (*Estate of Cohen* (1971) 4 Cal.3d 41 [92 Cal.Rptr. 684, 480 P.2d 300].) The trust instrument designated those persons to whom the principal was to be distributed upon the death of husband should he fail to amend or revoke. Despite the fact that a transfer of community property in fee from one spouse to the other did not constitute a taxable event, husband was taxed on the value of the property subject to the power pursuant to section 13694. The court held extrinsic evidence in the form of testimony by husband was inadmissible to show a contrary intent where, as a matter of law, the trust created a life estate plus a general power of appointment in the survivor.

In finding that the husband's power to revoke the trust gave him a general power of appointment, the court in *Cohen* adverted to federal tax authorities because 1965 legislative amendments rendered the tax aspects of the possession of a general power of appointment the same for federal and California purposes.[9] With respect to a general power of appointment, Treasury regulation section 20.2041-1(b)(1) provides in pertinent part as follows: "The term 'power of appointment' [as used in 26 U.S.C. § 2041, subd. (b)(1)] includes all powers which are in sub-

---

[9]The *Cohen* court observed: "The broad definition of a general power of appointment adopted by the California Legislature in 1965 conforms to the definition which has been applied for many years by federal estate tax authorities. (See 26 U.S.C.A. § 2041, subd. (b)(1).) Indeed, one of the purposes of the California legislative amendments to the Inheritance Tax Law in 1965 was to conform the taxation of powers of appointment under California Inheritance Tax Law to the practice under the federal estate tax laws. (40 State Bar J. (1965) at pp. 600, 606-607.) ..." (*Estate of Cohen, supra*, 4 Cal.3d 41, 49.)

stance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of local property law connotations. For example, if a trust instrument provides that the beneficiary may appropriate or consume the principal of the trust, the power to consume or appropriate is a power of appointment . . . . ”

Trust No. 2 expressly authorizes the trustee to invade the corpus of the trust to obtain money for the “support, maintenance, education and/or comfort” of any beneficiary entitled to participate in the income and may use the principal of the trust estate “up to and including the whole thereof” in the sole discretion of the trustee. Appellants argue, nonetheless, that the power for Thurlyne Waite as both trustee and life beneficiary to invade the corpus of trust No. 2 to provide for her own “comfort” is a limitation that renders the interest held by her a special rather than a general power of appointment and thus brings it within the exception set forth in section 13692, subdivision (a). Section 13692 provides that “the following shall not be deemed to be general powers of appointment: [¶] (a) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support or maintenance of the decedent.” However, under both federal and California case law, a power held by a beneficiary, whether directly or as trustee, which can be exercised for that beneficiary’s “comfort” has been determined to constitute a general power of appointment. (Int. Rev. Code, § 2041; § 13692, subd. (a); see *Doyle v. United States* (E.D.Pa. 1973) 358 F.Supp. 300, 307; *Estate of Allgeyer* (1976) 60 Cal.App.3d 169, 172-174 [129 Cal.Rptr. 820].)

In the *Allgeyer* case the will of the husband, who died in 1953, included a testamentary trust for Anna Allgeyer, his wife, who was to act as trustee. She was to receive the income for life and it was further provided that “‘(B) If aforesaid payments of net income from this trust to my said wife, ANNA E. ALLGEYER, shall be insufficient in the discretion of the Trustee to provide for her *reasonable support, care and comfort*, the Trustee may pay to her or apply for her benefit so much of the principal of the Trust Estate as it may deem proper or necessary for that purpose.’ (Italics added.)” (*Id.*, at p. 171.) The wife served as trustee until 1969 and a bank designated as successor trustee served thereafter until her death in 1974. When the report prepared by the inheritance tax referee imposed a tax on the entire corpus of the trust, the executrix of Anna’s will objected and appealed the order of the court affirming

the tax. The appellate court in determining that the entire corpus of the trust was taxable at the death of Anna Allgeyer adopted the reasoning of the California Supreme Court in *Estate of Nunn* (1974) 10 Cal.3d 799 [112 Cal.Rptr. 199, 518 P.2d 1151].

The court in the *Nunn* decision made the following observation relative to the ascertainable standard for invading trust corpus: "'The implementing federal administrative regulations provide some guidance in determining whether a given standard is properly ascertainable. "A power is limited by such a standard if the extent of the holder's duty to exercise and not to exercise the power is reasonably measurable in terms of his needs for health, education, or support (or any combination of them). As used in this subparagraph, the words 'support' and 'maintenance' are synonymous and their meaning is not limited to the bare necessities of life. A power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard. Examples of powers which are limited by the requisite standard are powers exercisable for the holder's 'support,' 'support in reasonable comfort,' 'maintenance in health and reasonable comfort,' 'support in his accustomed manner of living,' 'education, including college and professional education,' 'health,' and 'medical, dental, hospital and nursing expenses and expenses of invalidism.' In determining whether a power is limited by an ascertainable standard, it is immaterial whether the beneficiary is required to exhaust his other income before the power can be exercised." (26 C.F.R. § 20-2041-1, subd. (c)(2).) These provisions are lenient to a fault, equating, for example, "support," whose "meaning is not limited to the bare necessities of life," with "an ascertainable standard relating to...support" and "health" with "an ascertainable standard relating to...health."' (*Estate of Nunn, supra*, 10 Cal.3d 799, 806.)" (*Estate of Allgeyer, supra*, 60 Cal.App.3d 169, 172-173.)

As the court in *Allgeyer* further observes, the federal cases use a narrow interpretation in determining whether an ascertainable standard relating to health, education, support or maintenance limits the power. (See, e.g., *First Virginia Bank* v. *United States* (4th Cir. 1974) 490 F.2d 532, 536; *Lehman* v. *United States* (5th Cir. 1971) 448 F.2d 1318.)

The fact that the life beneficiary in the present case also exercised fiduciary duties with respect to the takers in default is insufficient to reduce her power of invasion of trust corpus from a general to a special

power and the fiduciary duties are irrelevant to the determination of this issue (*Estate of Nunn, supra,* 10 Cal.3d 799, 806-809). Clearly the provision for invasion of corpus for the purpose, inter alia, of the comfort of the life beneficiary in the case at bench does not constitute an ascertainable standard falling within the exclusion of section 13692, subdivision (a).

## II

Appellants further contend that the power was not taxable at the death of Thurlyne Waite because the Bank was then acting as sole and independent trustee, and that Thurlyne's resignation for ill health seven months earlier did not constitute a release of the power subject to inheritance tax under section 13696 or 13697. It is conceded that the possession of the power by the Bank in its capacity as an independent trustee following Thurlyne Waite's resignation did not render the corpus of trust No. 2 subject to inheritance tax. It was the release of the general power of appointment by Thurlyne Waite prior to her death which constituted the basis for the trial court's order affirming the inheritance tax.

It is clear that when Thurlyne Waite by resignation released the general power which, had she possessed it at her death, would have been taxable under section 13696 she continued to receive the trust income and this rendered the event a taxable transfer pursuant to section 13697. (See *Estate of Nunn, supra,* 10 Cal.3d 799, 811.)

The possession of a general power of appointment unexercised at the time of death renders the property subject to the power subject to inheritance tax, and the exercise of the power by will is also a taxable transfer. (§ 13696.)

Section 13697 imposes inheritance tax upon *inter vivos* dispositions of a general power (other than by disclaimer or renunciation which are inapplicable in the present case). Those *inter vivos* dispositions of a general power of appointment which occur under circumstances which cause them to be characterized as either an exercise or a release of the power are thus subject to inheritance tax. Thurlyne Waite possessed as trustee the power to invade the trust corpus for her own "comfort" and if such a power were possessed by her at her death that would consti-

tute a taxable transfer. (*Doyle* v. *United States* (E.D.Pa. 1973) 358 F.Supp. 300; *Estate of Allgeyer, supra*, 60 Cal.App.3d 169.) She did not exercise that power but resigned; this did not constitute a disclaimer or renunciation of the power. Her resignation constituted a release, an affirmative act making an *inter vivos* disposition of the unexercised power, while she retained the life income of the trust. Thereafter, although Thurlyne Waite no longer possessed the power, it continued to exist held by the trustee Bank. Thurlyne Waite fulfilled the formalities of a release which is to be by a "written instrument signed by the donee and delivered." (Civ. Code, § 1388.2.) It is not relevant that at the time of this voluntary act she did not know that she was effecting a taxable transfer. (See *Estate of Weaver* (1972) 27 Cal.App.3d 312, 319-320 [103 Cal.Rptr. 664].) The resignation of the trustee who is also life beneficiary at a time when the power is unexercised constitutes an *inter vivos* release (*Estate of Allgeyer, supra*, 60 Cal.App.3d at p. 171) taxable either by virtue of the retained life estate (§ 13644) or as a transfer in contemplation of death (§ 13642).

### III

■ Contrary to the contention of appellants, the determination of inheritance tax due at the time the preliminary decree of distribution in 1958 established trust No. 2 pursuant to the terms of the will of Fern Smith Buffum does not preclude the Controller from now imposing inheritance tax on a different basis pursuant to intervening modifications in the law relative to powers of appointment.

Prior to the 1965 legislative amendments to section 13691 et seq. expressly defining and taxing powers of appointment, a power to invade corpus coupled with a life estate was regarded as an incident of the life estate. (See, e.g., *Estate of Rath* (1937) 10 Cal.2d 399 [75 P.2d 509, 115 A.L.R. 836]; *Estate of Morse, supra*, 9 Cal.App.3d 411, 416.) The order fixing inheritance tax at the time of Fern Smith Buffum's death determined the value of the property transferred, identity of the transferees, and amount of tax due and payable under prevailing law (*Estate of Rath, supra*, 10 Cal.2d at p. 406) and it became final without objection by the Controller. The appellants have referred this court to no authority that the doctrine of res judicata applies to such orders relative to transfers by different decedents, and estoppel is precluded where there are different taxable events (see, e.g., *Estate of Dobbins* (1968) 258 Cal.App.2d 262, 271 [65 Cal.Rptr. 704]) or a change in the law

(*Chern* v. *Bank of America* (1971) 15 Cal.3d 866, 872 [127 Cal.Rptr. 110, 544 P.2d 1310]).

In this respect the decision which appears to be determinative is *Estate of Kingman* (1972) 26 Cal.App.3d 220 [103 Cal.Rptr. 208], where this court held that the taxation of assets in an earlier estate did not preclude their subsequent inclusion and taxation at the death of a second decedent. The court stated: "Contrary to the conclusion of the trial court, the recomputation does not result in double taxation prohibited by the California Constitution (art. XIII, § 1). Nor is the doctrine of estoppel, which the trial court applied, applicable to the office of the State Controller in the present case.

"'[O]rdinarily in the collecting of taxes the government cannot be estopped from collecting taxes because of an erroneous ruling of an administrative official. The true rule in this respect would appear to be that the taxpayer will be assessed only for the amount he would have paid originally, had the administrative ruling been correct.' (*Burhans* v. *County of Kern*, 170 Cal.App.2d 218, 226 [ . . . ].)

"The imposition of an inheritance tax upon the transfers which occurred upon the death of Ruth R. Kingman was separate and distinct from the earlier imposition of an inheritance tax upon the death of Walter R. Kingman. The fact that a mistake was made in determining the amount due on the earlier occasion does not bar the collection of the amount now found to be due upon the death of Ruth." (*Estate of Kingman, supra*, 26 Cal.App.3d at pp. 223-224.)

This logic is persuasive especially since it is apparent that California, by statute, has since 1965 exercised its authority to tax both the creation of a general power of appointment, and its exercise, release or possession at the death of the donee. (§§ 13696, 13697.) This development permits the state to collect inheritance tax in both instances on the theory that the holder of a life estate coupled with a general power of appointment although not holder of a fee interest exercises powers so broad that their possession is tantamount to total ownership. Accordingly, the Controller is empowered in the present case to impose an inheritance tax on the property subject to the general power of appointment held by Thurlyne Waite despite taxation of the trust corpus at the time of the creation of trust No. 2.

## DISPOSITION

The order is affirmed.

Lillie, Acting P. J., and Marshall, J.,* concurred.

The petition of appellant Ward for a hearing by the Supreme Court was denied July 23, 1980.

---

*Assigned by the Chairperson of the Judicial Council.