[Civ. No. 23049. Fourth Dist., Div. Two. Mar. 30, 1981.]

Estate of JOHN W. F. SMITH, Deceased.
KENNETH CORY, as State Controller, Petitioner and Appellant, v.
DON DEE SMITH, as Executor, etc., Objector and Respondent.

**COUNSEL**

Myron Siedorf, Margaret Groscup and Bettina A. Bate for Petitioner and Appellant.

Launer, Chaffee, Ward & Orman, Steven L. Rothrock and Walter B. Chaffee for Objector and Respondent.

## Opinion

**KAUFMAN, J.**—In general terms the issue presented is whether a power to invade corpus given the testamentary trustee in this case amounted to a general power of appointment or whether it was sufficiently circumscribed by ascertainable standards so as to be removed from that uncomfortable category.

The trial court found "that the language of the trust did set forth an ascertainable standard for determining 'reasonable care, comfort, support and maintenance' by using the guideline of 'the standard of living as of date of decedent's death.' This is a limitation on the power of the trustee and one that could be established with sufficient certainty to limit the actions of the trustee."

The State Controller appeals.

We are told that the will of Maude L. Smith set up a trust wherein the decedent herein was trustee and under which he was also a beneficiary; that the will and subsequent decree of distribution provided that decedent was to receive the net income from the trust estate in monthly or other convenient installments; and that he was to have a $5,000 or 5 percent power of appointment per year, noncumulative over the trust corpus. Thereafter, we are told, the will and decree contained the following provisions around which the dispute centers:

"(c) If the aforesaid payments from this trust to which John W. F. Smith is entitled shall be insufficient in the discretion of the trustee to provide *for his reasonable care, comfort, support and maintenance in accordance with the standard of living as of the date of decedent's death,* or for expenses of accident, illness or other misfortune, the trustee may pay to him or apply for his benefit so much of the principal of the trust as he may deem necessary and proper for such purposes.

".    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(i) In exercising its discretionary authority with respect to the payment of net income or principal of the trust estate or any share thereof to any beneficiary under any of the provisions hereof, the trustee shall take into consideration any income of, or other means of care, maintenance, support and education available to such beneficiary from sources outside of the trust held for his or her benefit that may be known to the

trustee; and the determination of the trustee with respect to the necessity for and the amounts of any payments from net income or principal to be made to or for the benefit of any beneficiary, as hereinabove provided, *shall be conclusive upon all persons howsoever interested in the trust* or trusts established hereunder." (Italics added.)

The decedent did not at any time during his lifetime invade the principal of the trust. That fact, however, does not preclude a determination that the power given the trustee to invade corpus amounted to a general power of appointment, and the Controller contends that in this case it does, relying principally upon *Estate of Nunn* (1974) 10 Cal.3d 799 [112 Cal.Rptr. 199, 518 P.2d 1151]; *Cory* v. *Ward* (1980) 106 Cal. App.3d 631 [165 Cal.Rptr. 330]; *Estate of Allgeyer* (1976) 60 Cal. App.3d 169 [129 Cal.Rptr. 820]; and Revenue and Taxation Code section 13692, which provides in relevant part: "'General power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate, provided that the following shall not be deemed to be general powers of appointment: [¶] (a) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an *ascertainable standard relating to the health, education, support, or maintenance* of the decedent." (Italics added.)

Preliminarily, we observe that the current and controlling portion of the Revenue and Taxation Code concerning powers of appointment was adopted in 1965 (Stats. 1965, ch. 1070, § 6, pp. 2716-2719) for the purpose of conforming state inheritance tax treatment of powers with the federal estate tax treatment; that the quoted language of section 13692 is substantially identical to that of the correlative federal statute; and that, therefore, great weight is appropriately accorded applicable federal administrative regulations and decisional law. (See *Estate of Nunn, supra*, 10 Cal.3d at pp. 805-806; *Estate of Cohen* (1971) 4 Cal.3d 41, 49 [92 Cal.Rptr. 684, 480 P.2d 300].)

We have concluded on two alternative bases that the position of the Controller on appeal is not well taken.

The first relates not to the substance of the Controller's contention but, rather, to a problem of appellate procedure arising out of the fact that the appeal is taken on the judgment roll, the entire record consisting of a meager clerk's transcript. This limited record precludes proper review of the trial court's determination.

■ Whether a power to invade corpus constitutes a general power of appointment must be determined by a consideration of the trust provisions as a whole. (Civ. Code, § 1641; *Ringrose* v. *Gleadall* (1911) 17 Cal.App. 664, 667 [121 P. 407]; see also Civ. Code, §§ 2253, 2258 and 2267; *United States* v. *Smither* (5th Cir. 1953) 205 F.2d 518, 519.) Where, as here, the will has been probated and judicially construed in a decree of distribution, the provisions to be considered are those found in the decree (*Estate of Callnon* (1969) 70 Cal.2d 150, 156 [74 Cal.Rptr. 250, 449 P.2d 186]; see *Estate of Nunn, supra,* 10 Cal.3d at p. 808), unless the language of the decree is ambiguous, in which case resort to the terms of the will may be had to resolve ambiguities. (*Estate of Callnon, supra,* 70 Cal.2d at p. 157; see *Estate of Nunn, supra.*)

The trial court was asked to and presumably did take judicial notice of the Maude L. Smith probate file which, of course, included both the will that created the trust and the decree of distribution. Presumably the trial court considered all of the provisions of the decree and possibly the provisions of the will. On that basis the trial court determined that the power of appointment given the decedent was not a general power but, rather, a power to invade the trust corpus limited by an ascertainable standard relating to the decedent's health, education, support or maintenance. ■ Absent the introduction of conflicting extrinsic evidence in the trial court, the interpretation of a written instrument such as a will or a judgment is a judicial function in which an appellate court is not bound by the trial court's interpretation but, rather, is called upon independently to interpret the instrument. (*Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385]; *Estate of Russell* (1968) 69 Cal.2d 200, 212-213 [70 Cal.Rptr. 561, 444 P.2d 353].) ■ In the case at bench, however, the record does not disclose whether or not extrinsic evidence was introduced in the court below nor whether any such extrinsic evidence was conflicting. Even more fundamentally, the record before us does not include all of the provisions of the decree of distribution or of the will that created the trust. We are given the language only of the selected provisions previously quoted. It is not possible therefore for this court independently to interpret the decree of distribution. Such interpretation, as previously indicated, must take cognizance of all of the decree's provisions and possibly those of the will. Accordingly, the interpretation adopted by the trial court must stand; as to matters upon which the record is silent, the judgment of the trial court is presumed correct. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193]; see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 235, p. 4225.)

The rule relied on is no mere technicality as applied to this case. "The definitions of a general power of appointment adopted under both California and federal tax law are based on the notion that the holder of the power has the right to determine the ultimate recipient of the property subject to the power and may, if he chooses, appoint the property to himself." (*Estate of Cohen, supra,* 4 Cal.3d at p. 50; accord: *Estate of Nunn, supra,* 10 Cal.3d at p. 809.) Unless the language used unambiguously creates a general power of appointment as a matter of law, the ascertainment of the breadth of the trustee's power is to be ascertained with reference to the intent of the trust's creator. (*Estate of Ferrall* (1953) 41 Cal.2d 166, 176 [258 P.2d 1009]; see *United States* v. *Smither, supra,* 205 F.2d at p. 519; *Funk* v. *Commissioner of Internal Revenue* (3d Cir. 1950) 185 F.2d 127, 129; Rest.2d Trusts, § 187, com. j.) In the case at bench we are told that one provision of the decree of distribution and the will that created the trust gave the trustee a power of appointment with respect to the trust corpus of $5,000 or 5 percent annually, noncumulative. The language of the provision is not before us because of the limited record upon which the appeal is taken. However, if the $5,000 or 5 percent power of appointment provision, as it is related to us, is considered, it is apparent that the testatrix could not have intended that the power to invade corpus now in question constitute a general power of appointment. If that were the intent, there would have been no occasion for the testatrix to also give to the trustee a power of appointment over the trust corpus limited to $5,000 or 5 percent per year, not to mention a noncumulative power to that effect.

The second basis for our conclusion is that, even if the point may appropriately be reached, the Controller is mistaken in concluding that the power to invade corpus given the decedent-trustee in this case amounted to a general power of appointment because not limited by an ascertainable standard relating to the health, education, support or maintenance of the decedent. The error lies in failing to recognize and give appropriate significance to the limiting language found in this trust and not in any of the trusts involved in the cases upon which the Controller relies: "in accordance with the standard of living as of the date of decedent's death."

In *Cory* v. *Ward, supra,* 106 Cal.App.3d 631, the trustee was authorized to invade the corpus of the trust for the "'support, maintenance, education and/or comfort' of any beneficiary…'up to and including the whole thereof' in the sole discretion of the trustee." (106 Cal.

App.3d at p. 640.) Relying on *Estate of Allgeyer, supra*, 60 Cal.App.3d 169, and *Estate of Nunn, supra*, 10 Cal.3d 799, the court held that "the provision for invasion of corpus for the purpose, inter alia, of the comfort of the life beneficiary . . . does not constitute an ascertainable standard falling within the exclusion of section 13692, subdivision (a)." (106 Cal.App.3d at p. 642.)

In the trust involved in *Estate of Allgeyer, supra*, 60 Cal.App.3d 169, the trustee was given the discretionary authority to invade the trust corpus "'for her reasonable support, care and comfort'," without qualification, if the income payments were in her discretion insufficient for that purpose. (*Id.* at p. 171.) Relying on *Estate of Nunn, supra*, 10 Cal.3d 799, the *Allgeyer* court concluded: "The power granted [the trustee] in this case was not limited in such a way as to reduce it from virtual ownership of the assets. 'Were we confronted with a dispute between the widow and the remaindermen over the propriety of an invasion, we would not adopt a grudging and narrow interpretation of . . . [comfort]. The interpretation we would adopt in that situation is the one to which we must now look to determine whether "an ascertainable standard relating to . . . health, education, support or maintenance" is established. [Citation.]' . . . It is not." (60 Cal.App.3d at p. 174.)

In *Estate of Nunn, supra*, 10 Cal.3d 799, the will gave the surviving life tenant "the power to invade the corpus for the life tenant's 'use and need' as the life tenant 'may determine.'" (*Id.* at p. 803.) The court stated: "The principal difficulties are associated with the word 'need.' . . . [¶] . . . [T]he concept of need or needs is a fluid one with a meaning which varies with and is to be derived from context. . . . [¶] *There is no rational basis in the instant case to define 'need' in terms of a dollar amount or in terms of an existing or identifiable standard of living.* Without excluding the possibility that some proposed or actual invasion might be deemed so inappropriate as to be impermissible, we would in general interpret the power granted as permitting virtually any invasion for any personal expense or standard of living adopted by [the surviving life tenant]. Such conclusion is bolstered by language describing the need to be 'as she may determine.' . . ." (*Id.* at p. 807; italics added.)

In the case at bench, the trust provides precisely the limiting factor the court said was missing in *Nunn* and which was similarly lacking in *Allgeyer* and *Cory v. Ward*, a basis upon which to define comfort "in terms of an existing or identifiable standard of living." The power of the trustee to invade the trust corpus to provide for "his reasonable care,

comfort, support and maintenance" was expressly limited to his "standard of living as of the date of decedent's death." The reliance by the court in *Nunn* on the absence of such a limiting factor implies that if such a limiting factor had been present, the court would have concluded that the power to invade was not a general power.

Nor is that implication negated by the *Nunn* court's partial reliance upon the implementing federal administrative regulations to the federal estate tax provision from which the language of the California statute was taken (26 C.F.R. § 20.2041-1(c)(2) (1980), see *Estate of Nunn, supra*, 10 Cal.3d at p. 805; *Estate of Cohen, supra*, 4 Cal.3d at p. 49). The regulation provides in pertinent part: "A power is limited by such a standard if the extent of the holder's duty to exercise and not to exercise the power is reasonably measurable in terms of his needs for health, education, or support (or any combination of them). As used in this subparagraph, the words 'support' and 'maintenance' are synonymous and their meaning is *not limited to the bare necessities of life*. A power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard. Examples of powers which *are* limited by the requisite standard are powers exercisable for the holder's...'support in reasonable *comfort*,' 'maintenance in health and reasonable *comfort*,' 'support in his accustomed manner of living,'..." (26 C.F.R. § 20.2041-1 (c)(2) (1980); italics added; see *Estate of Nunn, supra*, 10 Cal.3d at p. 806; *Estate of Allgeyer, supra*, 60 Cal.App.3d at p. 173; *Cory v. Ward, supra*, 106 Cal. App.3d at p. 641.)

A power to invade corpus to provide for a beneficiary's "reasonable care, comfort, support and maintenance in accordance with the standard of living as of the date of decedent's death" creates a far more ascertainable standard than several approved in the regulation, e.g., "for the holder's...'support in reasonable comfort,' [and] 'maintenance in health and reasonable comfort'" and at least as ascertainable a standard as "'support in his accustomed manner of living,'" which is also sanctioned by the regulation.

Finally the Controller urges that the trust provision making the trustee's decision as to the necessity for and the amounts of any payments "conclusive upon all persons...interested in the trust" effectively exempted the trustee from control or restraint from anyone and freed him "to determine his own desired degree of 'comfort.'" Not so. In the first place, inasmuch as the comfort for which the trustee was empow-

ered to invade corpus was limited to the "comforts" included within his standard of living at the date of death of the decedent, the trustee was not free "to determine his own desired degree of 'comfort.'" More importantly, this argument is based upon the erroneous assumption that the language used vested the trustee with an uncontrolled discretion to invade the corpus without restraint or regulation. It did not. Where, as here, the power of the trustee to invade corpus has been circumscribed by an ascertainable standard, "the designation of the trustee as 'sole judge', or even the grant to him of 'absolute discretion', [does not obviate] the necessity of [his] exercising his judgment in a sound and honest manner, or [relieve] him of the duty to act in good faith and with a proper motive *within the reasonable boundaries of such standard.*" (*Funk* v. *Commissioner of Internal Revenue, supra*, 185 F.2d at p. 130; italics added; accord: *Estate of Lackmann* (1958) 156 Cal.App.2d 674, 678 [320 P.2d 186]; see Civ. Code, § 2269.[1])

The parties have stipulated that one $15,000 account was inadvertently included twice on the report of the inheritance tax referee and therefore on the resulting order fixing the inheritance tax and that, therefore, if the order were to be otherwise affirmed, the case should be remanded to the trial court to modify the order to eliminate the duplicated item and redetermine the tax accordingly. It is so ordered. Otherwise the order appealed from is affirmed.

Gardner, P. J., and Tamura, J., concurred.

A petition for a rehearing was denied April 17, 1981, and appellant's petition for a hearing by the Supreme Court was denied June 10, 1981.

---

[1]That section reads: "A discretionary power conferred upon a trustee is presumed not to be left to his arbitrary discretion, but may be controlled by the proper Court if not reasonably exercised, unless an absolute discretion is clearly conferred by the declaration of trust."